IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-09-00420-CR

 

Christopher D. Willis,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 54th District
Court

McLennan County, Texas

Trial Court No. 2006-1594-C2

 



MEMORANDUM  Opinion



 








            Pursuant to a plea bargain,
Christopher Willis was placed on deferred adjudication community supervision
for aggravated sexual assault of a child.  About two years later, the State
filed a motion to adjudicate.  Willis pleaded true to the allegations, and the
court adjudicated his guilt and sentenced him to twenty-five years’
imprisonment.  Willis contends in his sole issue that the court erred by
assessing his court-appointed attorney’s fees as part of the costs after
finding him indigent less than a month earlier.  We will modify the judgment
and affirm the judgment as modified.

            Article 26.05(g) of the Code
of Criminal Procedure provides:

            If the court determines that
a defendant has financial resources that enable him to offset in part or in
whole the costs of the legal services provided, including any expenses and
costs, the court shall order the defendant to pay during the pendency of the
charges or, if convicted, as court costs the amount that it finds the defendant
is able to pay.

 

Tex. Code Crim.
Proc. Ann. art. 26.05(g) (Vernon
Supp. 2010).

            If the State fails to
present evidence that the defendant is able to pay all or part of his
court-appointed attorney’s fees, then the trial court commits error by
assessing any part of those fees as costs of court.  See Mayer v.
State, 274 S.W.3d 898, 901
(Tex. App.—Amarillo 2008), aff’d,
309 S.W.3d 552 (Tex. Crim. App. 2010).[1] 
Here, no such evidence was presented.

            The State concedes that the
court erred by assessing the court-appointed attorney’s fees as costs.  We
sustain Willis’s sole issue.

We modify the judgment by reducing the
amount of costs assessed against Willis from $1,735 to $885.  We affirm the
judgment as modified.

 

FELIPE REYNA

Justice

Before Chief
Justice Gray,

Justice
Reyna, and

Justice
Davis

Affirmed as
modified

Opinion
delivered and filed October 13, 2010

Do not publish

[CRPM]









[1]
              Regarding the
State’s burden of proof in this regard, the Court of Criminal Appeals noted in Mayer,
“there is no indication that the state was precluded from presenting evidence
and being heard on the issue of appellant’s financial resources and ability to
pay for reimbursement of the court-appointed-attorney fees.”  Mayer v. State,
309 S.W.3d 552, 557 (Tex. Crim. App. 2010).








tyle="font-family: 'CG Times', serif">Ellis County, Texas
Trial Court # F96-22566 & 22565
                                                                                                               

O P I N I O N
                                                                                                                    A jury convicted Appellant John Salas of robbery and aggravated robbery. Tex. Pen. Code.
Ann. §§ 29.02, 29.03 (Vernon 1998). The jury sentenced him to ten years’ confinement plus a
fine of $5,000 for his robbery conviction and seventy years’ confinement plus a fine of $10,000
for his aggravated robbery conviction. 
      Salas presents fifty-seven issues on appeal.


 He claims that: (1) the trial court erred when
it denied his motion to suppress his second and third written statements because they were obtained
in violation of his right to counsel under the Fifth, Sixth, and Fourteenth Amendments of the
United States Constitution; (2) the trial court erred when it denied his motion for new trial because
his second and third written statements were admitted in violation of his right to counsel under the
Fifth, Sixth, and Fourteenth Amendments of the United States Constitution; (3) and (4) the
evidence is legally and factually insufficient to support his convictions; (5) the trial court erred
when it overruled his objection to the State’s opening statement; and (6) his counsel at trial
rendered ineffective assistance when he failed to object to the State’s improper remarks during
closing arguments in the guilt-innocence and punishment phases of his trial and waived his Fifth
and Sixth Amendment objections to the admission of his second and third statements.
      We affirm the judgment.
FACTUAL BACKGROUND
      On the night of August 24, 1996, Salas and a group of four others, Jose Castillo, Samson
Maldonado, Anita Courson, and Mike Escobar (Courson’s husband), cruised Waxahachie in a car
driven by Escobar. At approximately 9:15 p.m., Salas and the others spotted Lareto Juarez sitting
in front of Juarez’s house. Salas and the others got out of the car and began to throw rocks. 
Juarez told them to stop throwing rocks and after a few more verbal exchanges, the group held
Juarez and began to punch him. Juarez fell to the ground and the group continued to hit him. 
Juarez testified that “some boys” came to see what the commotion was and that his attackers left
soon after the boys arrived. Juarez testified that he was severely beaten, that his jaw was injured
either when he fell to the ground or when he was hit with a brick or a piece of concrete, and that
his wallet was missing. Juarez testified that his wallet contained approximately $15 in cash and
his paycheck. Juarez testified that his wallet and paycheck were returned the next day, but that
his cash was missing. Juarez was unable to identify his assailants.
      After this encounter, Salas and the others ran back to the car and drove to an apartment
complex. At the complex, Salas and two others in the group, Castillo and Maldonado, got out of
the car and approached two men. Maldonado asked one of the men, Ismael Colunga, if he had
any money. Maldonado began to punch Colunga while Salas joined in the fracas. Colunga fell
to the ground and Salas searched his pockets. Salas then pulled a gun out of his pocket, waived
it at the congregating witnesses, and threatened that he would kill them if they told the police. The
three men ran back to the car, and Salas then split Colunga’s money with Castillo and Maldonado.
      On September 19, 1996, Detective Todd Woodruff of the Waxahachie Police Department
transported Salas to Dallas for an in-custody polygraph examination.


 Kirk Meehan administered
Salas’ polygraph examination. After Meehan completed Salas’ polygraph examination, he left the
room. Meehan, within earshot of Salas, told Woodruff that Salas’ polygraph results indicated
“deception.” Woodruff testified that he asked Salas if he wanted to give another statement, in
light of his polygraph results. Woodruff testified that Salas told him that he wanted to consult with
his attorney before he made another statement. Woodruff called Salas’ attorney and left a
message. Woodruff testified that he waited approximately twenty to thirty minutes for Salas’
attorney to return his call. Then, Salas called his attorney twice and left a message each time. 
Salas’ attorney did not return his phone calls. 
      Woodruff testified that Salas, after waiting for his attorney to call, took the initiative and
asked him whether he would have to take another polygraph examination if he were to give
another statement and tell the truth. Woodruff testified that he told Salas that as long as he told
the truth, he would take his statement and that he would not have to take another polygraph
examination. Woodruff read Salas his Miranda warnings, and Salas indicated that he understood
them and then voluntarily waived them. Woodruff testified that although Salas gave one additional
statement, he treated it as two separate statements because it concerned two separate offenses. 
Woodruff transcribed Salas’ statements at Salas’ request. Woodruff then gave Salas his statements
so that he could review them for mistakes. Salas read the statements and verified that there were
no mistakes. Woodruff asked Ms. Holden, an employee at the polygraph facility, to witness Salas
signing his statement. 
      Salas filed a motion to suppress his two statements on the basis that he was arrested without
probable cause, in violation of the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United
States Constitution and that his statements were fruits of the poisonous tree.


 During the hearing
on his motion to suppress, Salas urged the additional ground that his statements were obtained in
violation of his right to counsel under the Fifth Amendment of the United States Constitution. The
trial court denied Salas’ motion to suppress on the basis that his statements were not obtained in
violation of his right to counsel under the Fifth Amendment and that he understood his rights and
voluntarily waived them when he gave his two statements.
      At trial, the State called Jose Castillo, one of the members of Salas’ group.


 Castillo testified
that Salas and Maldonado attacked Juarez while he kicked him. Castillo also testified that he did
not see Salas take Juarez’s wallet but did see Salas search Juarez after he fell to the ground. 
Castillo testified that after Juarez’s attack, the group drove to some apartments where Salas and
Maldonado then attacked Colunga. Castillo testified that he saw Salas search Colunga’s pockets
and also saw Salas brandish his gun and threaten the witnesses who saw them attack Colunga.
      Anita Courson, a passenger in the car and the wife of the driver, testified that she was present
when Juarez and Colunga were attacked and robbed. Courson testified that she did not participate
in the robberies. Courson testified that the group drove to the house of their “enemy” and that
her husband parked the car after Salas ordered him to stop. Courson testified that Castillo,
Maldonado, and Salas were angry with one of the men outside the car and ran towards the house’s
driveway where the men stood. Courson testified that she could not see the attack from the car
but that she could see the house’s fence move as if someone was pushing something against it. 
Courson testified that Castillo, Maldonado, and Salas ran back to the car saying, “Hurry up” and
then they quickly drove away. Courson testified that when Salas ran back to the car, his shirt was
off and wrapped around something in his hands. Courson testified that Salas then handed her a
wallet and told her to throw it out of the car’s window. 
      Courson stated the group then drove to an apartment complex where they parked once more. 
Courson testified that Castillo, Maldonado, and Salas exited the car and walked toward the
apartments. Courson stated that approximately fifteen minutes later, the three men ran back to the
car. Courson stated that Maldonado told her husband “go, go, go, don’t hit the brake lights.” 
      Anthony Valles, a thirteen year old boy who witnessed Salas’ attack of Juarez, also testified. 
Valles gave a written statement to the police shortly after Juarez’s attack in which he stated that
he saw Salas attack Juarez with a brick. However, at trial Valles contradicted his statement and
testified that his friend saw more of the attack than he did and that he did not actually see Salas
attack Juarez. 
      Colunga’s treating physician, Dr. Joel Ciarochi, testified that Colunga had to be care-flighted
to Methodist Hospital in Dallas after he was attacked. Dr. Ciarochi testified that he was treated
for various head injuries. Dr. Ciarochi stated that Colunga was neurologically unresponsive and
had to be intubated and placed on a ventilator. Dr. Ciarochi testified that when Colunga arrived
at the hospital, he was given a Glascow Coma Score of three, which indicated that he was
completely unconscious and unresponsive. Dr. Ciarochi testified that when Colunga was released
from the hospital, he had normal responses to pain and normal respirations. However, his ability
to follow commands was limited. Dr. Ciarochi testified that Colunga did not return for follow-up
care but that he suspects Colunga has permanent injuries as a result of his attack.
MOTION TO SUPPRESS
      Salas’ first through twelfth and twenty-fifth through thirty sixth issues claim that the trial court
erred when it denied his motion to suppress his second and third statements because they were
obtained after he invoked his right to counsel.


 
      At a motion to suppress hearing, the trial court is the sole judge of the credibility of the
witnesses and the weight to be given their testimony. Villarreal v. State, 935 S.W.2d 134, 138
(Tex. Crim. App. 1996); Allridge v.State, 850 S.W.2d 471, 492 (Tex. Crim. App. 1991). When
reviewing a trial court’s ruling on a motion to suppress, we must afford almost total deference to
the trial court’s findings of fact and application of law to fact questions which are based upon an
evaluation of the credibility and demeanor of the witnesses. Loserth v. State, 963 S.W.2d 770,
772 (Tex. Crim. App. 1998); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). A
trial court’s determination of a motion to suppress lies within the discretion of that court. 
Villareal, 935 S.W.2d at 138. We must view the record evidence and all its reasonable inferences
in the light most favorable to the trial court’s ruling and sustain it if it is reasonably supported by
the record and is correct on any theory of law applicable to the case. Guzman, 955 S.W.2d at 89;
Villarreal, 935 S.W.2d at 138.
      The Fifth Amendment provides a suspect the right to have counsel present during custodial
interrogation. Edwards v. Arizona, 451 U.S. 477, 482, 101 S.Ct. 1880, 1883, 68 L.Ed.2d 378
(1981). Once a suspect invokes his Fifth Amendment right to counsel, the police cannot
interrogate him until counsel has been provided or the suspect initiates further communication with
the police. Id. at 484-85, 101 S.Ct. at 1884-85; Dinkins v. State, 894 S.W.2d 330, 350 (Tex.
Crim. App. 1995). A suspect’s invocation of his Fifth Amendment right to counsel requires some
statement by the defendant that can “reasonably be construed to be an expression of a desire for
the assistance of an attorney in dealing with custodial interrogation by the police.” McNeil v.
Wisconsin, 501 U.S. 171, 178, 111 S.Ct. 2204, 2209, 115 L.Ed.2d 158 (1991) (emphasis in
original); Green v. State, 934 S.W.2d 92, 97 (Tex. Crim. App. 1996). 
      The State does not contest Salas’ claim that he invoked his right to counsel under the Fifth
Amendment. Rather, the State maintains that Salas waived his Fifth Amendment right when he
initiated subsequent contact with Woodruff and indicated his desire to give another statement.       Whether Salas initiated his subsequent communication with Woodruff and whether he
knowingly, voluntarily, and intelligently waived his right to counsel are separate inquiries. 
Oregon v. Bradshaw, 462 U.S. 1038, 1045, 103 S.Ct. 2830, 2834-35, 77 L.Ed.2d 405 (1983);
Garcia v. State, 919 S.W.2d 370, 407 (Tex. Crim. App. 1994).
      Once a suspect has invoked his right to counsel under the Fifth Amendment, he is not to be
subjected to further interrogation until counsel has been provided for him. Edwards, 451 U.S.
at 484-85, 101 S.Ct. at 1884-85. Further, a suspect’s waiver of his Fifth Amendment right will
not be valid if it is in response to police-initiated interrogation. Id. During the hearing on Salas’
motion to suppress, Woodruff testified that he asked Salas whether he wanted to give another
statement because his polygraph results indicated that he was not telling the truth. Woodruff
testified that Salas, after asking to call his attorney and waiting for him to return his phone call,
asked him if he could make another statement so he would not have to take another polygraph
exam. 
      However, Salas testified that after his polygraph examination Meehan told him that his results
indicated that he was lying. Salas testified that he asked Meehan if he could speak to his attorney
and that Meehan then left the room. Salas further testified that Woodruff came back into the room
and held him there for four hours until he finally made two inculpatory statements. 
      The trial court heard the witnesses and was in the best position to evaluate their credibility. 
The trial court chose to believe Woodruff’s version of the events and determined that Salas
initiated subsequent communication with the police. We hold that the court did not abuse its
discretion. 
      Our next determination is whether Salas’ waiver of his right to counsel was voluntary. A
suspect may waive his constitutionally-protected rights if he does so knowingly, voluntarily, and
intelligently. Carroll v. State, 975 S.W.2d 630, 632 (Tex. Crim. App. 1998). A suspect’s
voluntary waiver of counsel must constitute a knowing and intelligent relinquishment or
abandonment of a known right or privilege. Edwards, 451 U.S. at 483, 101 S.Ct. at 1884. 
Woodruff read Salas his Miranda rights and had him initial a written copy before Salas gave his
second and third statements. Woodruff also had Salas read and review his statements before he
signed them and had a witness present to verify that Salas signed his statements voluntarily. The
trial court was in the best position to determine the credibility of the witnesses and chose to believe
Woodruff. We hold that the trial court did not abuse its discretion when it held that Salas
voluntarily waived his right to counsel under the Fifth Amendment.
      Salas next claims that Woodruff’s promise that he would not have to take a second polygraph
examination if he gave another statement rendered his subsequent statements involuntary. A
promise renders a suspect’s confession involuntary if the promise: (1) was positive; (2) was of
some benefit to the suspect; (3) was made or sanctioned by someone in authority; and (4) was of
such an influential nature that a defendant would speak untruthfully in response thereto. Davis v.
State, 961 S.W.2d 156, 159 (Tex. Crim. App. 1998); Blanks v. State, 968 S.W.2d 414, 421 (Tex.
App.—Texarkana 1998, pet. ref’d). Whether a promise renders a suspect’s confession involuntary
is determined by the totality of the circumstances. Creager v. State, 952 S.W.2d 852, 856 (Tex.
Crim. App. 1997).
      Salas does not detail why Woodruff’s alleged promise of no further polygraph examinations
would be enough to render his confession involuntary. Even assuming that Woodruff did make
such a promise to Salas, this promise does not render a benefit to Salas nor is it so influential that
it would render his consent involuntary. The trial court held that the promise that Salas would not
have to take a second polygraph examination was not a promise that would induce him to make
a false statement. We hold that the trial court did not abuse its discretion. 
      Salas further claims that the police also violated his right to counsel under the Sixth
Amendment when they allegedly initiated subsequent communication with him after he told the
police that he wanted to speak to his attorney. A suspect’s right to counsel under the Sixth
Amendment is offense-specific and attaches when adverse judicial proceedings have been initiated
against the suspect. Brewer v. Williams, 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d
424 (1977); Green v. State, 934 S.W.2d 92, 97 (Tex. Crim. App. 1996). Actions which mark the
initiation of adverse judicial proceedings include the filing of an indictment, filing an information
and complaint, an Article 15.17 “warning hearing” where an arrest warrant was present, a
preliminary hearing, and an arraignment. McFarland v. State, 928 S.W.2d 482, 507 (Tex. Crim.
App. 1996); Green v. State, 872 S.W.2d 717, 719 (Tex. Crim. App. 1994); Neumuller v. State,
953 S.W.2d 502, 514 (Tex. App.—El Paso 1997, pet. ref’d). An arrest alone does not trigger
adverse judicial proceedings, either with or without a warrant. McFarland, 928 S.W.2d at 507;
Green, 872 S.W.2d at 720; see also Nichols v. State, 754 S.W.2d 185, 190 (Tex. Crim. App.
1988) (arrest and subsequent questioning does not initiate adverse judicial proceedings);
Neumuller, 953 S.W.2d at 513 (holding that arrest and questioning of a person does not trigger
the Sixth Amendment).
      Salas had been arrested and was in custody when he gave his second and third statements on
September 19, 1996.


 However, he was not indicted for the two offenses until November 20,
1996, and he subsequently waived arraignment on December 5, 1996. We hold that Salas’ right
to counsel under the Sixth Amendment had not attached when he gave his second and third
statements.
      We overrule Salas’ first through twelfth and twenty-fifth through thirty-sixth issues.
MOTION FOR NEW TRIAL
      Salas’ thirteenth through twenty-fourth issues claim that the trial court erred when it denied
his motion for new trial because his second and third statements were obtained in violation of his
right to counsel under the Fifth, Sixth, and Fourteenth Amendments.
      We review the trial court’s denial of a motion for new trial under an abuse of discretion
standard. Lewis v. State, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995). As was discussed previously,
Salas’ right to counsel under the Fifth Amendment was not violated and his right to counsel under
the Sixth Amendment had not attached. Therefore, the trial court did not abuse its discretion when
it denied Salas’ motion for new trial.
      We overrule Salas’ thirteenth through twenty-fourth issues.
LEGAL AND FACTUAL SUFFICIENCYWhen conducting a legal sufficiency review, we review the evidence in the light most
favorable to the prosecution and determine whether, based on that evidence and all reasonable
inferences therefrom, any rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61
L.Ed.2d 560 (1979); Weightman v. State, 975 S.W.2d 621, 624 (Tex. Crim. App. 1998). 
      When conducting a factual sufficiency review we must view the evidence without the prism
of “in the light most favorable to the prosecution” and set aside the verdict only if the verdict is
so contrary to the overall weight of the evidence to be clearly wrong and unjust. Clewis v. State,
922 S.W.2d 126, 129 (Tex. Crim. App. 1996). We must review all of the evidence and consider
it as a whole, not just viewing it in the light most favorable to the other party. Cain v. State, 958
S.W.2d 404, 408 (Tex. Crim. App. 1997). When performing our review, we must give due
deference to the fact finder’s assessment of the weight and credibility of the evidence in order not
to act as the “thirteenth juror.” Calhoun v. State, 951 S.W.2d 803, 810 (Tex. App.—Waco 1997,
pet. ref’d). 
      Salas’ thirty-seventh and thirty-eighth issues claim that the evidence is legally and factually
insufficient to support his aggravated robbery conviction because the State failed to establish that
Colunga sustained “serious bodily injury.”
      A defendant commits aggravated robbery if he: (1) commits a robbery and (2) causes serious
bodily injury to another. Tex. Pen. Code Ann. § 29.03(a)(1) (Vernon 1998). “Serious bodily
injury” is defined as bodily injury which “creates a substantial risk of death or that causes death,
serious permanent disfigurement, or protracted loss or impairment of the function of any bodily
member or organ.” Tex. Pen. Code Ann § 1.07(a)(46) (Vernon 1998). The determination of
whether an injury constitutes “serious bodily injury” must be determined upon a case-by-case
basis. Hernandez v. State, 946 S.W.2d 108, 111 (Tex. App.—El Paso 1997, no pet.); Madden
v. State, 911 S.W.2d 236, 244 (Tex. App.—Waco 1995, pet. ref’d). In order to establish “serious
bodily injury,” the State must prove that the injury was life-threatening, that it was so grave or
serious that it must be regarded as differing in kind from other bodily harm, and that a
consequence of the injury is that it created a substantial risk of death. Moore v. State, 739 S.W.2d
347, 352 (Tex. Crim. App. 1987). 
      The State presented Dr. Ciarochi, Colunga’s treating physician, who testified that when
Colunga arrived by care-flight, his head was completely swollen and he had a large laceration over
his left temple. Dr. Ciarochi further testified that Colunga had to be intubated and placed on a
ventilator because he was unable to breathe on his own. Dr. Ciarochi testified that when Colunga
arrived, he was given a Glascow coma score of three, on a scale of one through fifteen. Colunga’s
score of three indicated that he was completely unconscious and not responsive to any stimuli. 
Dr. Ciarochi testified that as a result of Salas’ attack, Colunga remained in intensive care for
eleven days before he was eventually discharged from the hospital. The State, after reading the
definition for “serious bodily injury,” asked Dr. Ciarochi if Colunga sustained serious bodily
injury as a result of Salas’ attack. Dr. Ciarochi testified “Yes.” This testimony was
uncontroverted by Salas. Dr. Ciarochi’s testimony that Colunga’s injuries created a substantial
risk of death as a result of Salas’ attack is sufficient to establish that Colunga sustained “serious
bodily injury.” See Fancher v. State, 659 S.W.2d 836, 838 (Tex. Crim. App. 1983) (doctor’s
testimony that victim’s injuries “serious” and fact that victim was hospitalized for nine days and
had to have extensive surgery sufficient to establish “serious bodily injury”); Boney v. State, 572
S.W.2d 529, 532 (Tex. Crim. App. [Panel Op.] 1978) (doctor’s testimony that victim’s wound
could cause a substantial risk of death sufficient to establish “serious bodily injury”); Dusek v.
State, 978 S.W.2d 129, 133 (Tex. App.—Austin 1998, pet. ref’d) (doctor’s testimony supported
finding of “serious bodily injury”); Barrera v. State, 820 S.W.2d 194, 196 (Tex. App.—Corpus
Christi 1991, pet. ref’d) (doctor’s testimony that injuries created substantial risk of death sufficient
to establish “serious bodily injury”). 
      We overrule Salas’ thirty-seventh and thirty-eighth issues.
      Salas’ fortieth and forty-first issues claim that the evidence is legally and factually insufficient
to support his robbery conviction because it is based upon the uncorroborated testimony of Anita
Courson, an accomplice as a matter of law. 
      The test to determine whether a witness is an accomplice as a matter of law is whether there
is evidence in the record to support a charge against the witness, regardless whether the witness
is actually charged and prosecuted for her participation in the offense. Blake v. State, 971 S.W.2d
451, 455 (Tex. Crim. App. 1998). If a witness is an accomplice as a matter of law, her testimony
must be corroborated by other evidence which tends to connect the defendant with the offense
committed. Tex. Code. Crim. Proc. Ann. art. 38.14 (Vernon 1998). In order to determine the
sufficiency of the corroborative evidence, the accomplice witness testimony is eliminated from
consideration and the remaining evidence is examined to ascertain if there is some evidence which
tends to connect the defendant with the commission of the offense. Hernandez v. State, 939
S.W.2d 173, 176 (Tex. Crim. App. 1997). The non-accomplice corroborative evidence does not
need to establish the defendant’s guilt beyond a reasonable doubt, nor does it need to directly link
the defendant to the commission of the offense. Id.; Gill v. State, 873 S.W.2d 45, 48 (Tex. Crim.
App. 1994). The evidence must only tend to connect the defendant with the offense committed. 
Hernandez, 939 S.W.2d at 176; Gill, 873 S.W.2d at 48.
      Salas claims that because Courson assisted him in discarding Juarez’s wallet, remained in the
car after the robbery, and is married to the driver of the car that she is an accomplice witness as
a matter of law. Salas does not deny that Courson did not participate in the actual robbery. 
Therefore, Courson can only be an accomplice witness as a matter of law if she can be prosecuted
under the law of the parties for her participation in the offense. A person is criminally responsible
as a party to the offense if she, acting with intent to promote or assist the commission of the
offense, solicits, encourages, directs, aids, or attempts to aid the other person to commit the
offense. Tex. Pen. Code Ann. § 7.02(a)(2) (Vernon 1998). Mere presence at the scene of an
offense is not sufficient to support a conviction under the law of the parties but it is a factor to be
considered when determining whether one was a participant. Patterson v. State, 950 S.W.2d 196,
202 (Tex. App.—Dallas 1997, pet. ref’d). The extent of Courson’s participation in the robbery
of Juarez was limited at best—she threw Juarez’s wallet out of the car window. She did not drive
Salas to the scene of the robbery; nor did she help plan the robbery; nor did she share the proceeds
of the robbery with Salas. The record does not support that Courson had the requisite intent to
promote or assist the robbery. Therefore, Courson was not an accomplice as a matter of law. 
      We overrule Salas’ fortieth and forty-first issues.
OPENING STATEMENT
      Salas’ thirty-ninth issue claims that the trial court erred when it overruled his objection to the
State’s opening statement because the State speculated on the reason that Colunga would not be
present to testify and failed to present any evidence in support of their speculation. Specifically,
Salas complains about the following exchange:
PROSECUTOR:We believe the evidence is going to show you further that this
defendant, . . . walked up on a fellow by the name of Mr. Ismael
Colunga, who unfortunately is not going to able (sic) to testify here
today because of the severity of the injuries that he sustained and that
they beat him.
 
We believe the evidence is going to show you he sustained a very,
very, very serious beating that has basically left him . . .
 
SALAS: Judge, I’m going to object. He’s testifying. If Mr. Colunga is not going
to be here, how do we know the severity of his injuries. I believe . . .
 
COURT: I assume the State is relating that they anticipate what the testimony is going
to show, and I’ll let him do that.
 
      Salas objected at trial that the State was speculating as to the severity of Colunga’s injuries
and whether he actually sustained “serious bodily injury” as required for aggravated robbery. 
However, on appeal Salas complains that the State failed to prove the causal connection between
Colunga’s failure to testify and the severity of his injuries. Salas’ argument on appeal does not
comport with his objection at trial. An objection at trial stating one legal basis may not be used
to support a different legal theory on appeal. Curry v. State, 910 S.W.2d 490, 495 (Tex. Crim.
App. 1995); Burks v. State, 876 S.W.2d 877, 908 (Tex. Crim. App. 1994). We hold that Salas
did not make the same objection at trial as he does on appeal. Therefore, we find that he did not
preserve error. Burks, 876 S.W.2d at 908. However, we will address his argument in the interest
of justice. 
      A State’s opening statement should tell the jury the nature of the charges against the defendant
and the facts that it expects to prove in support of those charges. Tex. Code Crim. Proc. Ann.
art. 36.01 (Vernon 1998); Taylor v. State, 947 S.W.2d 698, 706 (Tex. App.—Fort Worth 1997,
pet. ref’d). It is not error for the State to tell the jury in its opening statement what it expects to
prove, even if it does not offer such proof at trial. Matamoros v. State, 901 S.W.2d 470, 475
(Tex. Crim. App. 1995). The State claimed that it would show that Colunga sustained “serious
bodily injury” as a result of Salas’ attack and it did. As stated earlier in this opinion, the State
presented the testimony of Dr. Ciarochi who testified that when Colunga arrived at the hospital,
he was unresponsive and was placed on a ventilator. Further, the State asked Dr. Ciarochi
whether Colunga sustained “serious bodily injury,” as described by section 1.07 of the Texas
Penal Code, and Dr. Ciarochi responded “Yes.” The State presented evidence that Colunga
sustained serious injuries from Salas’ attack. Therefore, the State’s opening statement was proper. 
Id.; see also Hullaby v. State, 911 S.W.2d 921, 927-28 (Tex. App.—Fort Worth 1995, pet. ref’d)
(holding that error was removed from State’s opening statement when evidence admitted to support
State’s position during opening statement). 
      We overrule Salas’ thirty-ninth issue.
INEFFECTIVE ASSISTANCE OF COUNSEL
      A. Ineffective Assistance of Counsel During Guilt-Innocence Phase
      Salas’ forty-second, forty-fourth, and fiftieth through fifty-seventh issues claim that his trial
counsel’s failure to object to the State’s improper remarks during closing argument in the guilt-innocence phase of his trial and his waiver of Salas’ Fifth and Sixth Amendment objections to the
admission of his second and third statements amounted to ineffective assistance of counsel. 
      A claim of ineffective assistance of counsel at the guilt-innocence phase requires a defendant
to show that: (1) counsel’s performance was deficient to the extent that counsel failed to function
as the “counsel” guaranteed by the Sixth Amendment and (2) that counsel’s deficient performance
prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80
L.Ed.2d 674 (1984); Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). In order
to show prejudice, the defendant must show that there is a reasonable probability that but for
counsel’s deficient performance, the result of the proceeding would have been different. Valencia
v. State, 946 S.W.2d 81, 83 (Tex. Crim. App. 1997); Chambers v. State, 903 S.W.2d 21, 32
(Tex. Crim. App. 1995). The defendant has the burden to prove a claim of ineffective assistance
of counsel by a preponderance of the evidence. McFarland v. State, 928 S.W.2d 482, 500 (Tex.
Crim. App. 1996).
      Our review of a claim of ineffective assistance of counsel is highly deferential. Strickland,
46 U.S. at 689, 104 S.Ct. at 2065; McFarland, 928 S.W.2d at 500. We must indulge a strong
presumption that counsel’s conduct falls within a wide range of reasonable representation and that
the challenged action might be considered sound trial strategy. McFarland, 928 S.W.2d at 500;
Jackson, 877 S.W.2d at 771. The defendant must affirmatively prove that the acts or omissions
alleged to constitute ineffective assistance of counsel fall below the professional norms for
reasonableness. Strickland, 466 U.S. at 690, 104 S.Ct. at 2066; McFarland, 928 S.W.2d at 500. 
After proving error, the defendant must affirmatively prove prejudice as a result of those acts or
omissions. Strickland, 466 U.S. at 693, 104 S.Ct. at 2067; McFarland, 928 S.W.2d at 500. 
Counsel’s error, even if professionally unreasonable, does not warrant setting the conviction aside
if counsel’s error had no effect on the judgment. Strickland, 466 U.S. at 691, 104 S.Ct. at 2066. 
The defendant must prove that counsel’s errors, judged by the totality of representation and the
totality of the evidence before the jury, denied him a fair trial. McFarland, 928 S.W.2d at 500. 
If the defendant fails to make the required showing of either deficient performance or prejudice,
his claim must fail. Id.
      Specifically, Salas’ forty-second and forty-fourth issues complain about counsel’s failure to
object to the following exchange: 
PROSECUTOR:What else did we bring you? We brought you Anthony Valles. 
Anthony is a young man. Anthony probably never thought back on
August 25th or 26th when he gave Todd Woodruff that statement, he
never thought about the fact that he was going to have to come in here
and face this animal.
 
As far as I’m concerned, that’s just what he and Joe Castillo and
Samson Maldonado are. They’re animals. They’re animals that need
to be caged. But Anthony told what he saw. He didn’t say anywhere
in that statement that – y’all are free, by the way, to take this back
there with you and you’re free to take these photographs back there
with you and I suggest you do if you want to.
 
 *******************************
 
There’s no testimony in the trial that this man here (Juarez) or Castillo
or Salas – or Samson Maldonado knew either one of these victims. 
They just happened to pick them out. And those same victims could
have been you, your spouse, could have been some of your kids.
 
This animal and his friends are roaming around here in Ellis County,
and it’s my job to bring them up here and present the evidence to you.

      Proper jury argument must be confined to four permissible areas: (1) summation of the
evidence; (2) reasonable deductions from the evidence; (3) answers to the arguments of opposing
counsel; and (4) pleas for law enforcement. Wilson v. State, 938 S.W.2d 57, 59 (Tex. Crim. App.
1996); Davila v. State, 952 S.W.2d 872, 878-79 (Tex. App.—Corpus Christi 1997, pet. ref’d). 
When the State’s jury argument falls outside these areas, error occurs and an instruction to
disregard the argument generally cures the error. Dinkins v. State, 894 S.W.2d 330, 357 (Tex.
Crim. App. 1995). 
      The Court of Criminal Appeals generally disapproves of the State’s characterization of a
defendant as an “animal” during its closing arguments, but whether such argument requires
reversal is determined upon a case-by-case basis. See Tompkins v. State, 774 S.W.2d 195, 218
(Tex. Crim. App. 1987). Assuming Salas’ counsel had objected to the State’s characterization of
Salas as an “animal” and the trial court sustained the objection, the trial court would have likely
cured any harm by giving an instruction to the jury to disregard. See Dinkins, 894 S.W.2 at 357;
see also Giesen v. State, 688 S.W.2d 176, 178 (Tex. App.—Dallas 1985, pet. ref’d) (holding that
trial court’s instruction to disregard cured any error resulting from State’s closing argument in
which it referred to defendant as “one of the animals”). 
      Further, Salas has not affirmatively proven that he was prejudiced by these remarks as
required by the second prong of Strickland. Looking at the totality of the evidence presented by
the State—Salas’ three written confessions and the testimony of Castillo, Courson, Valles, and
Woodruff—it is unlikely that the State’s remarks during closing arguments persuaded the jury to
convict Salas. Rather, the State’s presentation of strong evidence, pointing to Salas’ guilt, was
responsible for his conviction.



      We overrule Salas’ forty-second and forty-fourth issues.
      Salas’ fiftieth through fifty-seventh issues claim that his counsel’s waiver of his Fifth and
Sixth Amendment objections to the admission of his second and third written statements amounted
to ineffective assistance of counsel. As mentioned previously under issues one through thirty-six,
Salas’ right to counsel under the Fifth and Sixth Amendments was not violated. Therefore, if
Salas’ right to counsel under the Fifth and Sixth Amendments was not violated, then he can not
have a valid ineffective assistance of counsel claim for the alleged waiver of these objections. 
      We overrule Salas’ fiftieth through fifty-seventh issues. 
      B. Ineffective Assistance of Counsel During Punishment Phase
      Salas’ forty-third and forty-fifth through forty-seventh issues claim that his trial counsel’s
failure to object to the State’s improper remarks during closing arguments when the State
characterized him as an “animal” and a “scumbag” amounted to ineffective assistance of counsel. 
The Court of Criminal Appeals recently held that Strickland applies to the punishment phase of
a noncapital case. Hernandez v. State, No. 506-97, 1999 WL 212791 (Tex. Crim. App. April 14,
1999).


 As mentioned previously, Strickland requires a defendant to show that: (1) counsel’s
performance was deficient to the extent that counsel failed to function as the “counsel” guaranteed
by the Sixth Amendment and (2) counsel’s deficient performance prejudiced the defense. 
Strickland, 466 U.S. at 687, 104 S.Ct. at 2064; Jackson, 877 S.W.2d at 771. Under Duffy and
its progeny, the standard for punishment phase proceedings was whether the defendant received
“reasonably effective assistance of counsel.” Valencia v. State, 946 S.W.2d 81, 83 (Tex. Crim.
App. 1997) (citing Ex parte Duffy, 607 S.W.2d 507, 516 (Tex. Crim. App. 1980)). When
utilizing Duffy, the defendant did not have to show prejudice as a result of counsel’s ineffective
assistance at the punishment phase, as required under the second prong of Strickland. Vaughn v.
State, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996). However, a defendant must now show both
counsel’s deficient performance and that counsel’s deficient performance prejudiced the defense
for an ineffective assistance of counsel claim during the punishment phase. Strickland, 466 U.S.
at 687, 104 S.Ct. at 2064; Hernandez, 1999 WL 212791. 
      Specifically, Salas complains about the following remarks:
PROSECUTOR:If a man could have someone permanently mentally impaired for the
rest of his life, is that worth probation? I don’t like it, but I’ll say Ellis
County juries think that is worth probation; so the next scumbag that
comes in here and half beats someone to death, I’ll say just give him
probation. I don’t think that’s what you want, and I don’t think I’d be
doing my job if I did that.

*******************************
 
Probation? I don’t see it. I think this is a time for retribution or
punishment certainly to protect the rest of us from John Salas. I told
you he’s an animal. I still think he is. Unfortunately the punishment
he should get ain’t available. I ask you to consider that this case – how
could it get any worse? 

      Although the State’s characterization of a defendant as an “animal” is discouraged, whether
it requires reversal is determined upon a case-by-case basis. See Tompkins, 774 S.W.2d 195. If
we were to assume that the trial court would have sustained Salas’ objections to the State’s
remarks, the trial court could have likely cured the error by giving the jury an instruction to
disregard. See Dinkins, 894 S.W.2d at 357; Tompkins, 774 S.W.2d at 218; Giesen, 688 S.W.2d
at 178. 
      We overrule Salas’ forty-third and forty-fifth through forty-seventh issues.
      Salas’ forty-eighth and forty-ninth issues claim that his trial counsel’s failure to object to the
State’s improper remarks during closing arguments in the punishment phase of his trial amounted
to ineffective assistance of counsel because the remarks were an improper comment on his failure
to testify during the punishment phase because the State commented on his lack of remorse.
      The State cannot comment on a defendant’s failure to testify. Tex. Code Crim. Proc. Ann.
art. 38.08 (Vernon 1998); Vaughn, 931 S.W.2d at 572. Although Salas testified during the guilt-innocence but not the punishment phase of his trial, the State is prohibited from commenting on
his failure to testify during the punishment phase. See Swallow v. State, 829 S.W.2d 223, 226
(Tex. Crim. App. 1992) (State’s comments on defendant’s lack of remorse during punishment
phase were an improper comment on defendant’s failure to testify during the punishment phase
even though defendant testified during guilt-innocence phase). In order to qualify as a comment
on the defendant’s failure to testify, the State’s language, viewed from the jury’s standpoint, must
refer to evidence which can only come from the defendant. Goff v. State, 931 S.W.2d 537, 548
(Tex. Crim. App. 1996); Swallow, 829 S.W.2d at 225. When there is no evidence of the
defendant’s lack of remorse and the State comments upon it, the State’s comment would naturally
and necessarily be a comment on the defendant’s failure to testify because only the defendant can
testify as to his remorse. Swallow, 829 S.W.2d at 225; Oliva v. State, 942 S.W.2d 727, 734 (Tex.
App.—Houston [14th Dist.] 1997, pet. dism’d). However, if evidence in the record supports the
State’s comments, then there is no error. See Davis v. State, 782 S.W.2d 211, 222-23 (Tex.
Crim. App. 1989) (when record contains evidence that supports the State’s comment that
defendant did not show any remorse, no error and proper summation of the evidence); Roberts v.
State, 923 S.W.2d 141, 145 (Tex. App.—Texarkana 1996, pet. ref’d) (when record contains
evidence that demonstrates defendant’s lack of remorse at the scene of the crime or outside the
trial setting, the State’s comments were not improper comments on failure to testify but a
summation of the evidence); Richards v. State, 912 S.W.2d 374, 382 (Tex. App.—Houston [14th
Dist.] 1995, pet. ref’d) (State’s comments that non-testimonial demeanor of defendant indicated
no remorse was a proper summation of the evidence because record contained evidence that
supported comments). 
      Specifically, Salas complains about the following remarks:
PROSECUTOR:. . . I would feel insulted – to turn around and ask for probation. I tell
you what probation is for. Probation is when somebody comes up here
and shows you some remorse. And sitting in this chair right here, the
only, quote, remorse I heard was when I asked him, was he ashamed
of what he did or was he proud of what he did. You remember what he
said? Little bit. And I probably shouldn’t have done it, but I said, are
you ashamed about that much or are you ashamed of it this much? 
There hasn’t been any remorse shown by this defendant, not one bit.

      During the State’s cross-examination, Salas denied attacking either victim and testified that
his accomplices were responsible for the attacks. However, Salas admitted that he did not attempt
to help either victim after they were attacked, nor did he call an ambulance for either victim. 
Salas also admitted that he drove off with his accomplices and left Colunga laying on the ground
in the dirt and blood. Salas also admitted during cross-examination that he was not surprised when
Castillo and Maldonado beat up the two victims and that he “cared a little bit.”



      The State’s comment during closing arguments of the punishment phase of the trial referenced
Salas’ specific testimony in the guilt-innocence phase of his trial. The State did not comment upon
testimony that Salas failed to give or upon testimony that was noticeably absent and could only
come from Salas. Instead, the State commented upon testimony that Salas gave in which he
admitted that he did not have much remorse for the commission of the offenses. The State
commented upon Salas’ own statements. Therefore, the State’s comment during the punishment
phase of the trial was a summation of the evidence that was supported by the record. Salas’
counsel’s failure to object to the State’s proper closing argument is not error and accordingly, does
not amount to ineffective assistance of counsel. 
      We overrule Salas’ forty-eighth and forty-ninth issues.
      For the reasons stated, we affirm the trial court’s judgment.
                                                                               REX D. DAVIS
                                                                               Chief Justice
Before Chief Justice Davis
      Justice Cummings (not participating)
      Justice Vance
Affirmed
Opinion delivered and filed April 28, 1999
Do not publish