**Charles B. ROBERTS, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 06–95–00022–CR.**

Court of Appeals of Texas, Texarkana.

Submitted April 16, 1996.

Decided May 14, 1996.

Hugh P. Taylor, Marshall, for appellant.

Kevin McCarter, Assistant District Attorney, Marshall, for appellee.

## OPINION

CORNELIUS, Chief Justice.

Charles B. Roberts appeals his convictions for involuntary manslaughter [2] (DWI) and

---

**2.** Act of May 24, 1973, 63rd Leg., R.S., ch. 399, § 1, 1973 Tex.Gen.Laws 883, 913, *amended by* Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex.Gen.Laws 3586, 3614, current version found at Tex.Penal Code Ann. § 19.05

failure to stop and render aid. He contends that a police lineup was impermissibly suggestive; the court erred in denying his request for a mistrial after the State made an improper comment on his silence; the court erred in refusing his request for additional funds for an expert witness; and the court erred in refusing his requested jury charge on concurrent cause. We affirm the trial court's judgment.

Roberts was convicted by a jury on March 31, 1995. The jury assessed punishment at ten years in prison for involuntary manslaughter and two years for failing to stop and render aid.

The State accused Roberts of driving a pickup truck that struck and killed Carl Shepard, a long-distance trucker, on January 1, 1994. Witnesses testified that Roberts and some friends had been drinking that day and that the truck hit Shepard in late afternoon as he was standing beside his truck, which was parked along the shoulder of Interstate 20 in Harrison County. Roberts introduced evidence suggesting that his friend, William Harold Williamson, was actually driving the truck when it struck Shepard.

Roberts contends that he is entitled to a new trial because he was identified in a police lineup that was impermissibly suggestive.

On New Year's Day, 1994, Roland Rowson was driving his tractor-trailer past the 601–mile marker traveling east on I–20 between Longview and Marshall when he passed a red pickup truck, also eastbound. Rowson saw two tractor-trailer rigs parked on the shoulder of the eastbound side of I–20. After Rowson passed the pickup truck and the two rigs, he watched in his side mirror and saw the pickup truck strike Shepard, who was standing by one of the parked rigs. The pickup truck passed Rowson on the tractor-trailer's right, and Rowson followed. Rowson wrote down the license number of the pickup truck. He followed the truck and caught up with it at the FM 450 exit ramp, where the truck had exited and stopped. Rowson testified at a suppression hearing that he saw the driver get out of the driver's seat, urinate, and then switch seats with the person in the right passenger's seat. The passenger in the middle appeared to be asleep, Rowson said.

Highway Patrol Officer Terrence Helton picked up Rowson at a convenience store on FM 450 and took him to the scene of the accident. Within three hours, Rowson was taken to the Harrison County Sheriff's Department in Marshall. A red pickup truck had been stopped traveling eastbound on U.S. Highway 80, and the occupants had been taken to the department for a lineup. Harrison County Assistant District Attorney Ken Hill and police officers were present. The record is not clear regarding the number of people in the lineup. Rowson said "a few" individuals were in the lineup. Roberts suggests in his brief that the lineup was composed of only the three men in the pickup truck. Rowson identified Roberts as the driver and identified another man—apparently Williamson—as the passenger who switched seats. At the suppression hearing, he described Roberts as having blond hair, a mustache, and a black eye.

Roberts challenges Rowson's ability to remember how many people were in the lineup. He also points out that Rowson described Roberts as having a black *left* eye, but a photograph of the lineup shows an individual with a black *right* eye.[3] The three occupants of the pickup were white males of a similar age, and two of them, Roberts and David Kolle, had blond or light hair. A photograph of Roberts clearly shows he has a black eye, but at least one photograph of Williamson

(Vernon 1994) (now called criminally negligent homicide).

3. Plaintiff's Exhibit Number 29 apparently was a single panel of three photographs arranged side by side. Witnesses identified the photographs at trial by their location, that is, on the right, left, or middle. The three photographs were cut apart for inclusion in the appellate record. It is difficult to tell the relationships of the photographs, but we deduce, from physical descriptions and other photographs in the record, that photograph number one is Roberts, blond, mustached, with a black right eye and plaid shirt; number two is Williams, dark hair, mustached, wearing a white T-shirt; and number three is David Kolle, clean-shaven, receding hairline, wearing a muscle shirt.

suggests he, too, might have a black eye or dark circles under his eyes.

The due process clause of the Fourteenth Amendment prohibits the use of identification testimony from a witness who was subjected to an impermissibly suggestive pretrial identification procedure. *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); 40 GEORGE E. DIX & ROBERT O. DAWSON, CRIMINAL PRACTICE AND PROCEDURE § 14.11 (Texas Practice 1995). The reason for the rule is the substantial likelihood of misidentification that suggestive procedures may engender. *Webb v. State,* 760 S.W.2d 263, 269 (Tex.Crim.App.1988), *cert. denied,* 491 U.S. 910, 109 S.Ct. 3202, 105 L.Ed.2d 709 (1989) (citing *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)). If the totality of the circumstances reveals no substantial likelihood of misidentification even though the procedure was impermissibly suggestive, the court will consider the identification testimony reliable. Reliability is the linchpin in determining the identification testimony's admissibility. *Webb v. State, supra* (citing *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)). To be weighed against the corrupting effect of any suggestive identification procedure in assessing reliability, the court considers (1) the witness's opportunity to view the criminal at the time of the crime; (2) how much attention the witness was paying to the criminal; (3) the accuracy of the witness's description of the criminal; (4) the level of certainty the witness demonstrated at the confrontation; and (5) the time between the crime and the confrontation. *Webb v. State, supra.*

In this case, it is difficult to tell if the out-of-court identification was too suggestive. Although apparently the three pickup truck occupants were in the lineup, the record does not show who else, if anyone, was in the lineup. In this situation, however, Roberts has not met his burden of presenting a sufficient record to show error requiring reversal. TEX.R.APP.P. 50(d). Even if only the three pickup truck occupants were in the lineup, that does not necessarily render the lineup so suggestive that it undermined the reliability of the identification. In some conditions, even a one-person lineup may not be too suggestive. *Navarette v. State,* 875 S.W.2d 452, 454 (Tex.App.—Corpus Christi 1994, no pet.).

Here, Rowson saw the pickup truck driver soon after the truck hit Shepard. After seeing the truck strike Shepard, Rowson's attention was focused on the truck and its occupants, and he wrote down the pickup's license number. He followed the truck until it stopped. He watched the driver get out and urinate and then switch seats with a passenger. He described the driver as blond with a mustache and a black eye, although he varied on which eye was black. He was certain of his identification at the sheriff's department some three hours after the accident and the initial identification. Considering the totality of the circumstances, the pretrial lineup was not so suggestive that it resulted in a substantial likelihood of misidentification.

Roberts also argues that the trial court erred in overruling his motion for a mistrial based on the State's improper jury argument during the punishment phase. Roberts says the argument was an improper comment on his silence.

The prosecutor said:

The question for you, ladies and gentlemen is, does this defendant deserve probation. Does he deserve it for what he did. Does he deserve it for striking and killing Mr. Sheperd (sic), for leaving the scene, trying to hide his involvement, for lying to the officers, for lying to each and every one of you. *Failing to accept responsibility for what he did. That is one of the first things, I believe, is reasonable to say, before a person can be rehabilitated, before a person can have some redemption for an act, the first thing you have got to do is admit that you did it, be sorry about it.*

(Emphasis added.)

The court sustained the defense's objection and on the defense's request gave the jurors an instruction to disregard. The court then denied a defense request for a mistrial. Although Roberts testified at the guilt/innocence phase, he did not testify at the punishment phase.

■ The State may not allude to or comment on the defendant's failure to testify. Tex. Const. art. I, § 10; Tex.Code Crim. Proc.Ann. art. 38.08 (Vernon 1979). To constitute a violation of the rule, however, the prosecutor's language must be manifestly intended, or be of such a character that the jury would naturally and necessarily take it to be, a comment on the defendant's failure to testify. *Bower v. State*, 769 S.W.2d 887, 906 (Tex.Crim.App.1989). The reviewing court must view the challenged comment from the jury's standpoint, and the language must be more than an implied or indirect allusion to the defendant's silence. *Id.* at 907.

■ Where the record contains evidence demonstrating the defendant's lack of remorse at the scene of the crime or otherwise outside the trial setting, the language then is not a comment but a summary of the evidence. *Fearance v. State*, 771 S.W.2d 486, 514 (Tex.Crim.App.1988), *cert. denied*, 492 U.S. 927, 109 S.Ct. 3266, 106 L.Ed.2d 611 (1989); *see, e.g., Caldwell v. State*, 818 S.W.2d 790, 800–01 (Tex.Crim.App.1991), *cert. denied*, 503 U.S. 990, 112 S.Ct. 1684, 118 L.Ed.2d 399 (1992), *overr. on other grounds, Castillo v. State*, 913 S.W.2d 529 (Tex.Crim. App.1995); *Davis v. State*, 782 S.W.2d 211, 222–23 (Tex.Crim.App.1989), *cert. denied*, 495 U.S. 940, 110 S.Ct. 2193, 109 L.Ed.2d 520 (1990); *Hawkins v. State*, 660 S.W.2d 65, 79 (Tex.Crim.App.1983).

Roberts argues that only he could supply evidence of remorse and that the State's comment on his lack of remorse is an improper comment on his failure to testify. *See Swallow v. State*, 829 S.W.2d 223 (Tex.Crim. App.1992).

■ Here, evidence showed that Roberts drove a pickup truck when it struck and killed Shepard; that, in spite of the accident, he continued driving for another three miles to the FM 450 exit; and that he got out of the driver's side of the truck, urinated on the road, and then changed places with the person on the passenger's side of the truck.

These acts could well be taken to show Roberts' lack of remorse or even concern over the killing, as well as an attempt to cover up the crime and deny responsibility for it. That being true, the prosecutor's remarks can reasonably be construed to refer to Roberts' lack of remorse at the scene, and not to his silence at trial.

Roberts also contends that the trial court erred in denying his motion for additional funds for an expert witness.

Roberts asked the court for funds to engage an investigator and an expert witness. Roberts says that the court granted him only $500.00.[4] When he later asked for additional funds to hire an expert to inspect the accident scene and to inspect scientific evidence, the court denied the request.

Roberts argues that the circumstances surrounding Shepard's death were significant factors at the trial. The evidence included the speed of the vehicles involved, conflicting statements about the positions of the parked tractor-trailer rigs, conflicting testimony about the impact, and conflicting testimony about the time of the incident. Rowson's testimony suggested that Shepard may have been killed while trying to retrieve a metal fender. Kenneth Eller testified that he and Shepard were in separate trucks traveling together when he had a blowout and tore off a fender. When this happened, Shepard told Eller over the radio that he would stop and retrieve the fender.

Roberts also says that State witnesses were not able to testify about the trajectory of Shepard's body after impact, the length of the vehicles involved, whether the road shoulder was recessed, and the stopping time of the vehicles. He particularly notes his theory of defense that Shepard may have been in the lane of traffic on the highway when he was struck. Roberts argues that without an accident reconstruction expert, he could not adequately examine and cross-examine witnesses to present this theory.

■ A trial court shall reimburse appointed counsel in a criminal proceeding for

---

4. Roberts in his appellate brief says the trial court granted him $500.00 for investigative expenses after his first motion. The State does not dispute this. The court's order does not specify an amount.

reasonable expenses incurred with prior court approval for investigation and expert testimony. Tex.Code Crim.Proc.Ann. art. 26.05(a) (Vernon 1989). The decision to appoint an expert under Article 26.05 lies within the trial court's sound discretion. *Quin v. State*, 608 S.W.2d 937, 938 (Tex.Crim.App. [Panel Op.] 1980); *Moore v. State*, 836 S.W.2d 255, 260 (Tex.App.—Texarkana 1992, pet. ref'd) (citing *Stoker v. State*, 788 S.W.2d 1, 16 (Tex.Crim.App.1989), *cert. denied*, 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990)). To obtain the trial court's prior approval, a defendant must demonstrate to the trial court a specific need for the testimony. *Moore v. State*, 836 S.W.2d at 260–61. To preserve error when the court denies approval, the defendant must make some offer of proof in the form of a concise statement. *Id.* at 261.

Roberts in his motion for additional funds told the court only that the defendant needed an investigator to interview witnesses and "investigate the … case," and an expert witness to "examine the accident scene, which is evidence in this cause of action." Roberts said, "[T]he State has already conducted various tests on the scene" but that because of his lack of funds, he could not conduct similar tests to verify the results. Roberts concedes in his brief that he made no offer of proof, but says that the nature of the proof is clear because of the nature of the accident.

■ He also argues that *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), requires that a court in determining whether to provide an indigent defendant access to expert assistance must weigh (1) the private interest that will be affected by the State's action, (2) the government's interest affected by the safeguard provided, and (3) the probable value of the additional or substitute procedural safeguards that are sought, and the risk of an erroneous deprivation of the affected interest if those safeguards are not provided. *Ake*, however, required a defendant to demon-

strate to the trial judge the nature of the expert needed, in that case, a psychiatrist because the defendant's sanity was at issue. Here, Roberts failed to identify for the trial court the type of expert needed or the issues involved. Thus, Roberts failed to preserve error with respect to the funds.

Finally, Roberts contends that the trial court erred when it denied his requested concurrent causation jury instruction. Roberts contends that Shepard's own negligence in stepping into the roadway was the concurrent cause of his death.

■ A person is criminally responsible for an act if the result would not have occurred but for his conduct, unless a concurrent cause was clearly sufficient to produce the result, and the conduct of the actor was clearly insufficient to produce the result. Tex.Penal Code Ann. § 6.04(a).[5] A defendant is not entitled to a requested instruction on a defense unless there is some evidence to support that defense. Tex.Penal Code Ann. § 2.03(c).[6] A defendant is entitled to a charge on every defensive issue raised by the evidence, *Rodriquez v. State*, 544 S.W.2d 382, 383 (Tex.Crim.App.1976), whether or not the evidence is strong, weak, unimpeached, or contradicted, and even if the trial court is of the opinion that the testimony is not entitled to belief. *Warren v. State*, 565 S.W.2d 931, 933 (Tex.Crim.App. [Panel Op.] 1978).

The record contains the following evidence about Shepard's position when he was hit: (1) Rowson testified that Shepard was standing by his tractor-trailer rig when Rowson passed him and that Shepard "leaned in" as Rowson's tractor-trailer passed by. "I seen him step back" when the pickup truck struck Shepard, Rowson said. Rowson further testified that he did not think that the truck would have struck Shepard if Shepard had not "step[ped] back." (2) Investigating Officer Helton testified that Shepard "could possibly have been standing in the road," but he was only speculating in response to a hypothetical question. (3) Eller and Rowson testified that Shepard never saw the truck coming. (4) Eller testified that Shepard's body

5. Amended by Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex.Gen.Laws 3586, 3593, current version found at Tex.Penal Code Ann. § 6.04(a) (Vernon 1994).

6. Amended by Act of May 29, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex.Gen.Laws 3586, 3591, current version found at Tex.Penal Code Ann. § 2.03(c) (Vernon 1994).

was underneath the pickup truck. (5) Eller testified that he was standing between the tractor-trailer and the traffic lane, but that the pickup did not strike him. (6) Rowson testified that neither of the tractor-trailers had their warning triangles out on the road while on the shoulder of the road.

Rowson said, however, that Shepard did not step into the roadway. Nor did Eller place Shepard in the traffic lane. Officer Helton had no first-hand knowledge of Shepard's location and testified that, after speaking to witnesses, he placed Shepard's position off the road. Evidence that Shepard's body rolled beneath the pickup when he was struck is no evidence that he was in the roadway when he was hit.

■ Eyewitnesses placed Shepard off the roadway when he was struck. The only surmise about his being in the traffic lane came from an investigator who had no first-hand knowledge and merely acknowledged the defense-suggested possibility that Shepard might have been in the roadway. There was no testimony or other evidence that Shepard was in the road, even from Roberts, who testified. The court properly refused the requested instruction because there was no evidence to raise the issue.

For the reasons stated, the judgment is affirmed.