IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-09-00146-CV

 

BMTP Holdings, L.P.,

                                                                                    Appellant

 v.

 

City of Lorena,

                                                                                    Appellee

 

 



From the 170th District Court

McLennan County, Texas

Trial Court No. 2008-1516-4

 



MEMORANDUM  Opinion










 

            BMTP Holdings, L.P. appeals the
granting of the City of Lorena’s traditional motions for summary judgment, the
denial of BMTP’s traditional motion for summary judgment, and the award of
attorney’s fees to the City of Lorena.  BMTP sued the City of Lorena seeking a
declaratory judgment that a moratorium and its progeny imposed by the City
relating to permits for sewer connections did not apply to its developments,
and that the City could not refuse to grant permits based on such a moratorium
and an inverse condemnation cause of action alleging a regulatory taking.  The
trial court granted two separate traditional motions for summary judgment in
favor of the City and awarded the City its attorney’s fees.

            BMTP complains that the trial court
erred by granting the City’s motion for summary judgment and by denying their
competing motion on the declaratory judgment action.  BMTP further complains
that the trial court erred by granting the City’s motion for summary judgment
on its inverse condemnation claim.  BMTP complains that the trial court abused
its discretion in the award of attorney’s fees to the City.  Because we find
that the moratorium did not apply to BMTP, we reverse the judgment of the trial
court in its entirety, render judgment in favor of BMTP on its declaratory
judgment claim, and remand the inverse condemnation claim and the award of
attorney’s fees to the trial court for further proceedings.

Statement of Facts

            BMTP was a developer of subdivisions
in and around the City of Lorena, Texas.  BMTP typically acquired and platted
land, constructed infrastructure on that land, and then sold individual
subdivided lots to builders or individuals who then built residences on those
lots.  BMTP would generally complete this in phases, which could each last
several years.  In 2003, the infrastructure of Phase IV of the South Meadows
Estates was completed.  

            In early 2003, BMTP submitted a
preliminary plat for Phase V to the city manager of Lorena, which included the
technical details about the infrastructure that BMTP intended to construct.  After
the city planner and engineers had input, the preliminary plat was reviewed by
the Planning and Zoning Commission and then the Lorena City Council voted to
approve the preliminary plat.  After the approval of the preliminary plat, BMTP
began construction of the infrastructure, which included the necessary
facilities to service each lot with water, sewer, and other utilities as well
as streets, curbs, and gutters.  The sewer system was constructed by installing
a line that connected to the City’s existing line and then extended a sewer tap
to each lot within the subdivision to be later connected to a residence when it
was constructed.

            The final plat for Phase V was
submitted to the City Council for approval, and was approved by the Council’s
vote on January 16, 2006.  Approval of the plat signified that the City had
accepted the plat, that the plat complied with any relevant city ordinances,
and that the subdivision was ready for residential construction.  Prior to the
plat’s final approval, the sewer taps were required to be connected to the
City’s sewer system and tested.  Before beginning construction on a residence,
an application for a sewer connection was required in order to secure a
residential building permit from the City.

            Although the vote approving the final
plat regarding Phase V by the City Council took place on January 16, 2006, the
final plat was not delivered to a representative of BMTP until June 5, 2006. 
The plat was recorded with the McLennan County Clerk by BMTP the same day.  When
the City Manager delivered the final plat to BMTP’s representative, he informed
the representative that a moratorium on the issuance of sewer taps had been
adopted earlier that day, June 5, 2006.  The infrastructure had been fully
completed prior to that date.  Additionally, by that time BMTP had sold fifteen
of the twenty-one lots in Phase V, and all of the lots in Phase IV but one.

            The City was aware that it was having
substantial capacity problems in its sewer system as early as 2003; however,
the City contended that it was not until May of 2006 that they realized the
depth of the problem, which led to the initial moratorium.  According to the
City Manager, it was the responsibility of the City’s engineers to review the
plat prior to approval and to determine, in part, that the City’s
infrastructure, including its sewer capacity, was sufficient.  It was the
opinion of the engineers that the sewer capacity of the City was sufficient to
support the subdivision until the end of May, 2006 when the engineers informed
the City that the City was operating above its capacity, and that the
moratorium was needed to attempt to get the problem under control until a new
sewer plant could be constructed.

The final approval of the plat included a
statement by the City Engineer that the plat conformed to the City’s
subdivision ordinance and recommended approval of the final plat.  A second
engineer certified that “proper engineering consideration” had been given to
the plat that had been signed on June 5, 2006, which was the same day that the
first moratorium was voted on by the City Council.  The plat did not become
effective until it was recorded with the County Clerk of McLennan County, which was on June 5, 2006.

            The City’s moratorium was adopted by
an ordinance on its second reading on June 12, 2006 to prevent the connection
of any new residential or commercial buildings to the City’s sewer system for a
period of 120 days.  During the 120 days, the City agreed to exempt from the
moratorium the fifteen lots in Phase V that had either been sold or were under
contract to be sold by BMTP as of June 5, 2006.  The original moratorium was
extended and reworded at various times until November 17, 2008, when it was
repealed and replaced by a new moratorium that was in large part substantively
the same as the prior moratoriums.  

            On April 24, 2008, BMTP filed a
declaratory judgment action against the City of Lorena seeking a declaration
that the City’s moratorium in effect at that time did not apply to Phase V;
that the City could not enforce the moratorium as to the lots in Phase V
because they were previously approved for development; and that the City could
not deny building permits for the remaining lots in Phase V due to the
moratorium.[1]

            BMTP filed a motion for summary judgment
and the City filed a plea to the jurisdiction, both of which were denied by the
trial court.  The City then filed a traditional motion for summary judgment. 
BMTP responded to the City’s motion, filed a motion to reconsider the denial of
its motion for summary judgment, and amended its petition to include an inverse
condemnation cause of action.  The trial court granted the City’s motion for
summary judgment and denied BMTP’s motion to reconsider the trial court’s prior
denial of its motion for summary judgment.  The City filed another motion for
summary judgment based on the inverse condemnation claim, which the trial court
also granted.  The trial court also awarded the City its attorney’s fees.

Standard of Review

Both parties’ motions for summary judgment sought
judgments that would declare the parties’ rights pursuant to the declaratory
judgment actions.  We review declaratory judgments under the same standards as
other judgments.  See Tex. Civ.
Prac. & Rem. Code Ann. § 37.010 (Vernon 2008).  We look to the
procedure used to resolve the issue before the trial court to determine the
standard of review on appeal.  City of Galveston v. Tex. Gen. Land Office,
196 S.W.3d 218, 221 (Tex. App.—Houston [1st Dist.] 2006, pet. denied).  When a
trial court resolves a declaratory judgment action on competing motions for
summary judgment, we review the propriety of the declaratory judgment using the
same standards that we follow in reviewing a summary judgment.  Id.

We review a trial court’s
decision to grant or to deny a motion for summary judgment de novo.  See Tex. Mun. Power Agency v. Pub. Util. Comm'n of Tex., 253 S.W.3d 184, 192, 199 (Tex. 2007) (citing rule for review of grant of summary judgment and reviewing denied
cross-motion for summary judgment under same standard).  Although a denial of
summary judgment is not normally reviewable, we may review such a denial when
both parties move for summary judgment and the trial court grants one motion
and denies the other.  Id. at 192.  In our review of such cross-motions,
we review the summary judgment evidence presented by each party, determine all
questions presented, and render the judgment that the trial court should have
rendered.  Tex. Mun. Power Agency, 253 S.W.3d at 192 (citing Comm’rs Court v. Agan, 940 S.W.2d 77, 81 (Tex. 1997)).

Under the traditional
summary judgment standard, the movant has the burden to show that no genuine
issues of material fact exist and that it is entitled to judgment as a matter
of law.  Tex. R. Civ. P. 166a(c);
Nixon v. Mr. Prop. Mgmt. Co., Inc., 690 S.W.2d 546, 548 (Tex. 1985).  If the order granting the summary judgment does not specify the grounds upon
which judgment was rendered, we must affirm the summary judgment if any of the
grounds in the summary judgment motion is meritorious.  FM Props. Operating
Co. v. City of Austin, 22 S.W.3d 868, 872 (Tex. 2000).

Local Government Code Chapter 212

            BMTP complains that the trial court
erred by granting the City’s motion for summary judgment and denying its motion
for summary judgment because chapter 212 of the Local Government Code prohibits
the imposition of a moratorium on its property that had already been approved
for development prior to the imposition of the original moratorium.

            Under section 212.135 of the Local
Government Code, a municipality has the power to institute a moratorium on
property development if it demonstrates a “need to prevent a shortage of
essential public facilities.”  Tex. Loc.
Gov’t Code Ann. § 212.135(a) (Vernon 2008).  Sewer facilities are
included in public facilities.  Tex.
Loc. Gov’t Code Ann. § 212.131(1) (Vernon 2008).  Property development
is defined as “the construction, reconstruction, or other alteration or
improvement of residential or commercial buildings or the subdivision or the
replatting of a subdivision of residential or commercial property.”  Tex. Loc. Gov’t Code Ann. § 212.131(3)
(Vernon 2008).  

            In order to impose a moratorium on
property development to prevent a shortage of essential public facilities,
certain written findings must be included by the municipality, one of which is
a summary of “evidence demonstrating that the moratorium is reasonably limited
to property that has not been approved for development because of the
insufficiency of existing essential public facilities.”  Tex. Loc. Gov’t Code Ann. §
212.135(b)(2)(B) (Vernon 2008).

            BMTP contends that the approval of
their plats constituted “property development” pursuant to section 212.131, and
that the moratorium therefore did not, and could not, apply to sewer
connections on any of the vacant lots in their approved subdivisions pursuant
to the restriction in section 212.131(b)(2)(B) that excludes property that has
been approved for development.  The City contends that BMTP’s scope of approved
property development is too broad and that once BMTP completed all of the
property development that it was permitted to complete, which was the
subdivision and infrastructure only, additional approval was required separate
and apart from that to develop the property further, including connections to
the sewer system.  According to the City, once the subdivision was complete
according to the approved plat, then BMTP’s property development that was
approved was completed and the City could institute a moratorium to prevent
additional development of that property.

            Prior to the amendment of the statute
in 2005, “property development” was defined in section 212.131 of the Local
Government Code as “the construction of residential buildings.”  See Acts
2001, 77th Leg., ch. 441, effective September 1, 2001; amended by Acts
2005, 79th Leg., ch. 1321 (H.B. 3461), § 1, effective September 1, 2005.  The
statute was amended in 2005 to add other types of residential development as
well as commercial development into the definition of “property development.” 
The City contends that the statute should be read to contain two separate types
of property development; the first being the “construction, reconstruction, or
other alteration or improvement of residential or commercial buildings,” and
the second, “the subdivision or replatting of a subdivision of residential or
commercial property.”  The City further contends that each of the two types of
development is separate and distinct for purposes of determining whether
property has been “approved for development.”  See Tex. Loc. Gov’t Code Ann. §
212.135(b)(2)(B) (Vernon 2008).  

Neither party has cited to, nor have we found any
authority regarding the scope of chapter 212.  We find that the definition of
“property development” includes the full range of development contemplated by
section 212.131(3) and that it does not describe each of the component parts
separately and distinctly from the others.  

This construction of section 212.131(3) is similar
to the application of the term “project” in Chapter 245 of the Local Government
Code, which regulates the issuance of permit applications.  See Tex. Loc. Gov’t Code Ann. Ch. 245
(Vernon 2005).  The term “project” in Chapter 245 has been held to encompass
the entire development process from the preliminary plat to the construction of
a structure within the subdivision, which does not change unless the scope of
the “project” changes, regardless of changes in ownership.  See Hartsell
v. Town of Talty, 130 S.W.3d 325, 328-29 (Tex. App.—Dallas 2004, pet.
denied).  Chapter 245 contemplates that more than one permit is required to
complete a project, but the project includes the entire process, not the
discrete components.  The definition of “property development” is similarly
broad and includes the entire process from platting to finishing construction
of infrastructure and buildings.

            We hold that the trial court erred by
granting the City’s motion for summary judgment based on Subchapter E of
Chapter 212 of the Local Government Code.  Further, we find that the trial
court erred by denying BMTP’s motion for summary judgment to make the
declarations as prayed for by BMTP.  BMTP was entitled to the following
declarations:

(1)   
Under Chapter 212 of the Local
Government Code, any moratorium currently in effect on the issuance of sewer
taps within the City of Lorena and its extraterritorial jurisdiction does not
apply to any of the lots contained in South Meadows Estates, because South
Meadows Estates was approved for development before the adoption of these
moratoriums;

 

(2)   
The City shall not enforce the
current moratorium or any extension thereof to the lots contained in South
Meadows Estates because those lots have already been approved for development;

 

(3)   
The City shall not deny
building permits for the remaining lots in South Meadows Estates based upon any
existing moratorium. 

 

By this holding, we express no opinion as to
whether the City has the ability to deny a permit for reasons other than the
moratorium or BMTP’s damages, if any, that might be related thereto.  We
sustain issue one.  We sustain issue two solely on the basis of subchapter
212.  Because we have determined that Phase V was not subject to the moratorium
pursuant to chapter 212, we do not reach the issues of whether or not the
moratoriums were enacted in conformance with the requirements of chapter 212 or
whether chapter 245 applies.

Inverse Condemnation

             BMTP complains that the trial court
erred by granting the City’s motion for summary judgment based on BMTP’s
inverse condemnation claim.  BMTP alleged in its petition that the moratorium
constituted a taking pursuant to article I, section 17 of the Texas
Constitution.  Tex. Const. art.
I, § 17.  The City’s motion for summary judgment sought a finding that as a
matter of law the moratorium could not constitute a compensable taking.  

A taking may be either physical or regulatory.  Mayhew
v. Town of Sunnyvale, 964 S.W.2d 922, 933 (Tex. 1998).  A compensable
regulatory taking occurs if: (1) the governmental regulations deprive a
property owner of all economically viable use of the property or totally
destroys the property’s value; or (2) the governmental restrictions
unreasonably interfered with BMTP’s rights to use its property.  See id. 
We are to conduct an essentially “ad hoc, factual inquir[y]” using the
following guiding factors: (1) the economic impact of the regulation on BMTP;
(2) the extent to which the regulation has interfered with BMTP’s reasonable
investment-backed expectations; and (3) the character of the City’s action.  Sheffield
Dev. Co. v. City of Elgin Heights, 140 S.W.3d 660, 672 (Tex. 2004).  In
addition to these factors, which are generally referred to as the Penn
Central factors, we should consider all relevant attendant circumstances as
well.  Penn Central Transport Co. v. New York City, 438 U.S. 104, 124, 98 S. Ct. 2646, 57 L. Ed. 2d 631 (1978); Hallco Tex., Inc v. McMullen County, 221 S.W.3d 50, 56 (Tex. 2006).

We note that, based on the precedent of the Texas
Supreme Court in Sheffield, the burden required in the factual
allegations presented by BMTP is a high one.  Id.  Sheffield complained
that a temporary moratorium constituted a compensable taking but the Court
disagreed.  Sheffield also related to a purchaser of property who
purchased the property relying on certain zoning standards then in effect, who
had extensive contacts with City officials regarding his plans for the
development, and who was similarly, as the Court put it, “blindsided” by the
City’s moratorium.  See Sheffield Dev. Co., 140 S.W.3d at 678.  However,
while the Court did not approve of the City’s methods in Sheffield, the
Court nevertheless found that there was not a constitutionally compensable
taking, either for the change in zoning or for the temporary moratorium.  

In Sheffield, however, there was not a
challenge to the ability of the City to impose the moratorium.  Sheffield
Dev. Co., 140 S.W.3d at 679.  In this case, however, the City’s motion for
summary judgment on the inverse condemnation action was premised upon the
application of the moratorium to BMTP.  Therefore, we believe that the judgment
entered on the inverse condemnation cause of action must also be reversed and
remanded because of our finding that the moratorium did not apply to BMTP’s
lots.  We sustain issue three.

Attorney’s Fees

BMTP complains that the trial court abused its
discretion by awarding attorney’s fees to the City and denying its request for
attorney’s fees pursuant to the Uniform Declaratory Judgment Act.  Tex. Civ. Prac. & Rem. Code Ann. §
37.009 (Vernon 2008).  Section 37.009 allows for the recovery of attorney’s
fees that are reasonable and necessary as well as equitable and just.  Id.  Because we have determined that the trial court erred by granting the City’s
motion for summary judgment and by denying BMTP’s motion for summary judgment,
we reverse the award of attorney’s fees to the City and remand that issue to
the trial court for a determination of whether attorney’s fees should be
awarded and to which party, if any.  See State Farm Lloyds v. Borum, 53
S.W.3d 877, 894-95 (Tex. App.—Dallas 2001, pet. denied) (reversing and
remanding “because the record does not reflect the trial court’s reasons for
its award of fees to [the prevailing party], there is no evidence to indicate
whether the trial court’s award of fees would also be equitable and just in light
of our opinion in this case.”).  We sustain issue four.

Conclusion

            We find that the trial court erred by
granting the City’s motions for summary judgment and by denying BMTP’s motion
for summary judgment based on the declaratory judgment action.  We reverse and
render judgment in favor of BMTP on its declaratory judgment action.  We
reverse and remand the inverse condemnation claim to the trial court for
further proceedings.  We find that the award of attorney’s fees should be
reversed and remanded to the trial court for further proceedings in accordance
with this opinion.

 

                                                                        TOM
GRAY

                                                                        Chief
Justice

 

Before Chief Justice
Gray,

            Justice
Davis, and

            Judge Sowder[2]

Reversed and rendered in
part; reversed and remanded in part

Opinion delivered and filed
December 22, 2010

[CV06]









[1] 
The petition seeking the declaratory judgment was later amended by BMTP to
include all of South Meadows Estates, which included Phase IV.





[2]
The Honorable William C. Sowder, Judge of the 99th District Court of Lubbock County, sitting by assignment of the Chief Justice of the Supreme Court of
Texas pursuant to section 74.003(h) of the Government Code.  See Tex. Gov’t Code Ann. § 74.003(h)
(Vernon 2005).








ermined that Salas
initiated subsequent communication with the police. We hold that the court did not abuse its
discretion. 
      Our next determination is whether Salas’ waiver of his right to counsel was voluntary. A
suspect may waive his constitutionally-protected rights if he does so knowingly, voluntarily, and
intelligently. Carroll v. State, 975 S.W.2d 630, 632 (Tex. Crim. App. 1998). A suspect’s
voluntary waiver of counsel must constitute a knowing and intelligent relinquishment or
abandonment of a known right or privilege. Edwards, 451 U.S. at 483, 101 S.Ct. at 1884. 
Woodruff read Salas his Miranda rights and had him initial a written copy before Salas gave his
second and third statements. Woodruff also had Salas read and review his statements before he
signed them and had a witness present to verify that Salas signed his statements voluntarily. The
trial court was in the best position to determine the credibility of the witnesses and chose to believe
Woodruff. We hold that the trial court did not abuse its discretion when it held that Salas
voluntarily waived his right to counsel under the Fifth Amendment.
      Salas next claims that Woodruff’s promise that he would not have to take a second polygraph
examination if he gave another statement rendered his subsequent statements involuntary. A
promise renders a suspect’s confession involuntary if the promise: (1) was positive; (2) was of
some benefit to the suspect; (3) was made or sanctioned by someone in authority; and (4) was of
such an influential nature that a defendant would speak untruthfully in response thereto. Davis v.
State, 961 S.W.2d 156, 159 (Tex. Crim. App. 1998); Blanks v. State, 968 S.W.2d 414, 421 (Tex.
App.—Texarkana 1998, pet. ref’d). Whether a promise renders a suspect’s confession involuntary
is determined by the totality of the circumstances. Creager v. State, 952 S.W.2d 852, 856 (Tex.
Crim. App. 1997).
      Salas does not detail why Woodruff’s alleged promise of no further polygraph examinations
would be enough to render his confession involuntary. Even assuming that Woodruff did make
such a promise to Salas, this promise does not render a benefit to Salas nor is it so influential that
it would render his consent involuntary. The trial court held that the promise that Salas would not
have to take a second polygraph examination was not a promise that would induce him to make
a false statement. We hold that the trial court did not abuse its discretion. 
      Salas further claims that the police also violated his right to counsel under the Sixth
Amendment when they allegedly initiated subsequent communication with him after he told the
police that he wanted to speak to his attorney. A suspect’s right to counsel under the Sixth
Amendment is offense-specific and attaches when adverse judicial proceedings have been initiated
against the suspect. Brewer v. Williams, 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d
424 (1977); Green v. State, 934 S.W.2d 92, 97 (Tex. Crim. App. 1996). Actions which mark the
initiation of adverse judicial proceedings include the filing of an indictment, filing an information
and complaint, an Article 15.17 “warning hearing” where an arrest warrant was present, a
preliminary hearing, and an arraignment. McFarland v. State, 928 S.W.2d 482, 507 (Tex. Crim.
App. 1996); Green v. State, 872 S.W.2d 717, 719 (Tex. Crim. App. 1994); Neumuller v. State,
953 S.W.2d 502, 514 (Tex. App.—El Paso 1997, pet. ref’d). An arrest alone does not trigger
adverse judicial proceedings, either with or without a warrant. McFarland, 928 S.W.2d at 507;
Green, 872 S.W.2d at 720; see also Nichols v. State, 754 S.W.2d 185, 190 (Tex. Crim. App.
1988) (arrest and subsequent questioning does not initiate adverse judicial proceedings);
Neumuller, 953 S.W.2d at 513 (holding that arrest and questioning of a person does not trigger
the Sixth Amendment).
      Salas had been arrested and was in custody when he gave his second and third statements on
September 19, 1996.


 However, he was not indicted for the two offenses until November 20,
1996, and he subsequently waived arraignment on December 5, 1996. We hold that Salas’ right
to counsel under the Sixth Amendment had not attached when he gave his second and third
statements.
      We overrule Salas’ first through twelfth and twenty-fifth through thirty-sixth issues.
MOTION FOR NEW TRIAL
      Salas’ thirteenth through twenty-fourth issues claim that the trial court erred when it denied
his motion for new trial because his second and third statements were obtained in violation of his
right to counsel under the Fifth, Sixth, and Fourteenth Amendments.
      We review the trial court’s denial of a motion for new trial under an abuse of discretion
standard. Lewis v. State, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995). As was discussed previously,
Salas’ right to counsel under the Fifth Amendment was not violated and his right to counsel under
the Sixth Amendment had not attached. Therefore, the trial court did not abuse its discretion when
it denied Salas’ motion for new trial.
      We overrule Salas’ thirteenth through twenty-fourth issues.
LEGAL AND FACTUAL SUFFICIENCYWhen conducting a legal sufficiency review, we review the evidence in the light most
favorable to the prosecution and determine whether, based on that evidence and all reasonable
inferences therefrom, any rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61
L.Ed.2d 560 (1979); Weightman v. State, 975 S.W.2d 621, 624 (Tex. Crim. App. 1998). 
      When conducting a factual sufficiency review we must view the evidence without the prism
of “in the light most favorable to the prosecution” and set aside the verdict only if the verdict is
so contrary to the overall weight of the evidence to be clearly wrong and unjust. Clewis v. State,
922 S.W.2d 126, 129 (Tex. Crim. App. 1996). We must review all of the evidence and consider
it as a whole, not just viewing it in the light most favorable to the other party. Cain v. State, 958
S.W.2d 404, 408 (Tex. Crim. App. 1997). When performing our review, we must give due
deference to the fact finder’s assessment of the weight and credibility of the evidence in order not
to act as the “thirteenth juror.” Calhoun v. State, 951 S.W.2d 803, 810 (Tex. App.—Waco 1997,
pet. ref’d). 
      Salas’ thirty-seventh and thirty-eighth issues claim that the evidence is legally and factually
insufficient to support his aggravated robbery conviction because the State failed to establish that
Colunga sustained “serious bodily injury.”
      A defendant commits aggravated robbery if he: (1) commits a robbery and (2) causes serious
bodily injury to another. Tex. Pen. Code Ann. § 29.03(a)(1) (Vernon 1998). “Serious bodily
injury” is defined as bodily injury which “creates a substantial risk of death or that causes death,
serious permanent disfigurement, or protracted loss or impairment of the function of any bodily
member or organ.” Tex. Pen. Code Ann § 1.07(a)(46) (Vernon 1998). The determination of
whether an injury constitutes “serious bodily injury” must be determined upon a case-by-case
basis. Hernandez v. State, 946 S.W.2d 108, 111 (Tex. App.—El Paso 1997, no pet.); Madden
v. State, 911 S.W.2d 236, 244 (Tex. App.—Waco 1995, pet. ref’d). In order to establish “serious
bodily injury,” the State must prove that the injury was life-threatening, that it was so grave or
serious that it must be regarded as differing in kind from other bodily harm, and that a
consequence of the injury is that it created a substantial risk of death. Moore v. State, 739 S.W.2d
347, 352 (Tex. Crim. App. 1987). 
      The State presented Dr. Ciarochi, Colunga’s treating physician, who testified that when
Colunga arrived by care-flight, his head was completely swollen and he had a large laceration over
his left temple. Dr. Ciarochi further testified that Colunga had to be intubated and placed on a
ventilator because he was unable to breathe on his own. Dr. Ciarochi testified that when Colunga
arrived, he was given a Glascow coma score of three, on a scale of one through fifteen. Colunga’s
score of three indicated that he was completely unconscious and not responsive to any stimuli. 
Dr. Ciarochi testified that as a result of Salas’ attack, Colunga remained in intensive care for
eleven days before he was eventually discharged from the hospital. The State, after reading the
definition for “serious bodily injury,” asked Dr. Ciarochi if Colunga sustained serious bodily
injury as a result of Salas’ attack. Dr. Ciarochi testified “Yes.” This testimony was
uncontroverted by Salas. Dr. Ciarochi’s testimony that Colunga’s injuries created a substantial
risk of death as a result of Salas’ attack is sufficient to establish that Colunga sustained “serious
bodily injury.” See Fancher v. State, 659 S.W.2d 836, 838 (Tex. Crim. App. 1983) (doctor’s
testimony that victim’s injuries “serious” and fact that victim was hospitalized for nine days and
had to have extensive surgery sufficient to establish “serious bodily injury”); Boney v. State, 572
S.W.2d 529, 532 (Tex. Crim. App. [Panel Op.] 1978) (doctor’s testimony that victim’s wound
could cause a substantial risk of death sufficient to establish “serious bodily injury”); Dusek v.
State, 978 S.W.2d 129, 133 (Tex. App.—Austin 1998, pet. ref’d) (doctor’s testimony supported
finding of “serious bodily injury”); Barrera v. State, 820 S.W.2d 194, 196 (Tex. App.—Corpus
Christi 1991, pet. ref’d) (doctor’s testimony that injuries created substantial risk of death sufficient
to establish “serious bodily injury”). 
      We overrule Salas’ thirty-seventh and thirty-eighth issues.
      Salas’ fortieth and forty-first issues claim that the evidence is legally and factually insufficient
to support his robbery conviction because it is based upon the uncorroborated testimony of Anita
Courson, an accomplice as a matter of law. 
      The test to determine whether a witness is an accomplice as a matter of law is whether there
is evidence in the record to support a charge against the witness, regardless whether the witness
is actually charged and prosecuted for her participation in the offense. Blake v. State, 971 S.W.2d
451, 455 (Tex. Crim. App. 1998). If a witness is an accomplice as a matter of law, her testimony
must be corroborated by other evidence which tends to connect the defendant with the offense
committed. Tex. Code. Crim. Proc. Ann. art. 38.14 (Vernon 1998). In order to determine the
sufficiency of the corroborative evidence, the accomplice witness testimony is eliminated from
consideration and the remaining evidence is examined to ascertain if there is some evidence which
tends to connect the defendant with the commission of the offense. Hernandez v. State, 939
S.W.2d 173, 176 (Tex. Crim. App. 1997). The non-accomplice corroborative evidence does not
need to establish the defendant’s guilt beyond a reasonable doubt, nor does it need to directly link
the defendant to the commission of the offense. Id.; Gill v. State, 873 S.W.2d 45, 48 (Tex. Crim.
App. 1994). The evidence must only tend to connect the defendant with the offense committed. 
Hernandez, 939 S.W.2d at 176; Gill, 873 S.W.2d at 48.
      Salas claims that because Courson assisted him in discarding Juarez’s wallet, remained in the
car after the robbery, and is married to the driver of the car that she is an accomplice witness as
a matter of law. Salas does not deny that Courson did not participate in the actual robbery. 
Therefore, Courson can only be an accomplice witness as a matter of law if she can be prosecuted
under the law of the parties for her participation in the offense. A person is criminally responsible
as a party to the offense if she, acting with intent to promote or assist the commission of the
offense, solicits, encourages, directs, aids, or attempts to aid the other person to commit the
offense. Tex. Pen. Code Ann. § 7.02(a)(2) (Vernon 1998). Mere presence at the scene of an
offense is not sufficient to support a conviction under the law of the parties but it is a factor to be
considered when determining whether one was a participant. Patterson v. State, 950 S.W.2d 196,
202 (Tex. App.—Dallas 1997, pet. ref’d). The extent of Courson’s participation in the robbery
of Juarez was limited at best—she threw Juarez’s wallet out of the car window. She did not drive
Salas to the scene of the robbery; nor did she help plan the robbery; nor did she share the proceeds
of the robbery with Salas. The record does not support that Courson had the requisite intent to
promote or assist the robbery. Therefore, Courson was not an accomplice as a matter of law. 
      We overrule Salas’ fortieth and forty-first issues.
OPENING STATEMENT
      Salas’ thirty-ninth issue claims that the trial court erred when it overruled his objection to the
State’s opening statement because the State speculated on the reason that Colunga would not be
present to testify and failed to present any evidence in support of their speculation. Specifically,
Salas complains about the following exchange:
PROSECUTOR:We believe the evidence is going to show you further that this
defendant, . . . walked up on a fellow by the name of Mr. Ismael
Colunga, who unfortunately is not going to able (sic) to testify here
today because of the severity of the injuries that he sustained and that
they beat him.
 
We believe the evidence is going to show you he sustained a very,
very, very serious beating that has basically left him . . .
 
SALAS: Judge, I’m going to object. He’s testifying. If Mr. Colunga is not going
to be here, how do we know the severity of his injuries. I believe . . .
 
COURT: I assume the State is relating that they anticipate what the testimony is going
to show, and I’ll let him do that.
 
      Salas objected at trial that the State was speculating as to the severity of Colunga’s injuries
and whether he actually sustained “serious bodily injury” as required for aggravated robbery. 
However, on appeal Salas complains that the State failed to prove the causal connection between
Colunga’s failure to testify and the severity of his injuries. Salas’ argument on appeal does not
comport with his objection at trial. An objection at trial stating one legal basis may not be used
to support a different legal theory on appeal. Curry v. State, 910 S.W.2d 490, 495 (Tex. Crim.
App. 1995); Burks v. State, 876 S.W.2d 877, 908 (Tex. Crim. App. 1994). We hold that Salas
did not make the same objection at trial as he does on appeal. Therefore, we find that he did not
preserve error. Burks, 876 S.W.2d at 908. However, we will address his argument in the interest
of justice. 
      A State’s opening statement should tell the jury the nature of the charges against the defendant
and the facts that it expects to prove in support of those charges. Tex. Code Crim. Proc. Ann.
art. 36.01 (Vernon 1998); Taylor v. State, 947 S.W.2d 698, 706 (Tex. App.—Fort Worth 1997,
pet. ref’d). It is not error for the State to tell the jury in its opening statement what it expects to
prove, even if it does not offer such proof at trial. Matamoros v. State, 901 S.W.2d 470, 475
(Tex. Crim. App. 1995). The State claimed that it would show that Colunga sustained “serious
bodily injury” as a result of Salas’ attack and it did. As stated earlier in this opinion, the State
presented the testimony of Dr. Ciarochi who testified that when Colunga arrived at the hospital,
he was unresponsive and was placed on a ventilator. Further, the State asked Dr. Ciarochi
whether Colunga sustained “serious bodily injury,” as described by section 1.07 of the Texas
Penal Code, and Dr. Ciarochi responded “Yes.” The State presented evidence that Colunga
sustained serious injuries from Salas’ attack. Therefore, the State’s opening statement was proper. 
Id.; see also Hullaby v. State, 911 S.W.2d 921, 927-28 (Tex. App.—Fort Worth 1995, pet. ref’d)
(holding that error was removed from State’s opening statement when evidence admitted to support
State’s position during opening statement). 
      We overrule Salas’ thirty-ninth issue.
INEFFECTIVE ASSISTANCE OF COUNSEL
      A. Ineffective Assistance of Counsel During Guilt-Innocence Phase
      Salas’ forty-second, forty-fourth, and fiftieth through fifty-seventh issues claim that his trial
counsel’s failure to object to the State’s improper remarks during closing argument in the guilt-innocence phase of his trial and his waiver of Salas’ Fifth and Sixth Amendment objections to the
admission of his second and third statements amounted to ineffective assistance of counsel. 
      A claim of ineffective assistance of counsel at the guilt-innocence phase requires a defendant
to show that: (1) counsel’s performance was deficient to the extent that counsel failed to function
as the “counsel” guaranteed by the Sixth Amendment and (2) that counsel’s deficient performance
prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80
L.Ed.2d 674 (1984); Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). In order
to show prejudice, the defendant must show that there is a reasonable probability that but for
counsel’s deficient performance, the result of the proceeding would have been different. Valencia
v. State, 946 S.W.2d 81, 83 (Tex. Crim. App. 1997); Chambers v. State, 903 S.W.2d 21, 32
(Tex. Crim. App. 1995). The defendant has the burden to prove a claim of ineffective assistance
of counsel by a preponderance of the evidence. McFarland v. State, 928 S.W.2d 482, 500 (Tex.
Crim. App. 1996).
      Our review of a claim of ineffective assistance of counsel is highly deferential. Strickland,
46 U.S. at 689, 104 S.Ct. at 2065; McFarland, 928 S.W.2d at 500. We must indulge a strong
presumption that counsel’s conduct falls within a wide range of reasonable representation and that
the challenged action might be considered sound trial strategy. McFarland, 928 S.W.2d at 500;
Jackson, 877 S.W.2d at 771. The defendant must affirmatively prove that the acts or omissions
alleged to constitute ineffective assistance of counsel fall below the professional norms for
reasonableness. Strickland, 466 U.S. at 690, 104 S.Ct. at 2066; McFarland, 928 S.W.2d at 500. 
After proving error, the defendant must affirmatively prove prejudice as a result of those acts or
omissions. Strickland, 466 U.S. at 693, 104 S.Ct. at 2067; McFarland, 928 S.W.2d at 500. 
Counsel’s error, even if professionally unreasonable, does not warrant setting the conviction aside
if counsel’s error had no effect on the judgment. Strickland, 466 U.S. at 691, 104 S.Ct. at 2066. 
The defendant must prove that counsel’s errors, judged by the totality of representation and the
totality of the evidence before the jury, denied him a fair trial. McFarland, 928 S.W.2d at 500. 
If the defendant fails to make the required showing of either deficient performance or prejudice,
his claim must fail. Id.
      Specifically, Salas’ forty-second and forty-fourth issues complain about counsel’s failure to
object to the following exchange: 
PROSECUTOR:What else did we bring you? We brought you Anthony Valles. 
Anthony is a young man. Anthony probably never thought back on
August 25th or 26th when he gave Todd Woodruff that statement, he
never thought about the fact that he was going to have to come in here
and face this animal.
 
As far as I’m concerned, that’s just what he and Joe Castillo and
Samson Maldonado are. They’re animals. They’re animals that need
to be caged. But Anthony told what he saw. He didn’t say anywhere
in that statement that – y’all are free, by the way, to take this back
there with you and you’re free to take these photographs back there
with you and I suggest you do if you want to.
 
 *******************************
 
There’s no testimony in the trial that this man here (Juarez) or Castillo
or Salas – or Samson Maldonado knew either one of these victims. 
They just happened to pick them out. And those same victims could
have been you, your spouse, could have been some of your kids.
 
This animal and his friends are roaming around here in Ellis County,
and it’s my job to bring them up here and present the evidence to you.

      Proper jury argument must be confined to four permissible areas: (1) summation of the
evidence; (2) reasonable deductions from the evidence; (3) answers to the arguments of opposing
counsel; and (4) pleas for law enforcement. Wilson v. State, 938 S.W.2d 57, 59 (Tex. Crim. App.
1996); Davila v. State, 952 S.W.2d 872, 878-79 (Tex. App.—Corpus Christi 1997, pet. ref’d). 
When the State’s jury argument falls outside these areas, error occurs and an instruction to
disregard the argument generally cures the error. Dinkins v. State, 894 S.W.2d 330, 357 (Tex.
Crim. App. 1995). 
      The Court of Criminal Appeals generally disapproves of the State’s characterization of a
defendant as an “animal” during its closing arguments, but whether such argument requires
reversal is determined upon a case-by-case basis. See Tompkins v. State, 774 S.W.2d 195, 218
(Tex. Crim. App. 1987). Assuming Salas’ counsel had objected to the State’s characterization of
Salas as an “animal” and the trial court sustained the objection, the trial court would have likely
cured any harm by giving an instruction to the jury to disregard. See Dinkins, 894 S.W.2 at 357;
see also Giesen v. State, 688 S.W.2d 176, 178 (Tex. App.—Dallas 1985, pet. ref’d) (holding that
trial court’s instruction to disregard cured any error resulting from State’s closing argument in
which it referred to defendant as “one of the animals”). 
      Further, Salas has not affirmatively proven that he was prejudiced by these remarks as
required by the second prong of Strickland. Looking at the totality of the evidence presented by
the State—Salas’ three written confessions and the testimony of Castillo, Courson, Valles, and
Woodruff—it is unlikely that the State’s remarks during closing arguments persuaded the jury to
convict Salas. Rather, the State’s presentation of strong evidence, pointing to Salas’ guilt, was
responsible for his conviction.



      We overrule Salas’ forty-second and forty-fourth issues.
      Salas’ fiftieth through fifty-seventh issues claim that his counsel’s waiver of his Fifth and
Sixth Amendment objections to the admission of his second and third written statements amounted
to ineffective assistance of counsel. As mentioned previously under issues one through thirty-six,
Salas’ right to counsel under the Fifth and Sixth Amendments was not violated. Therefore, if
Salas’ right to counsel under the Fifth and Sixth Amendments was not violated, then he can not
have a valid ineffective assistance of counsel claim for the alleged waiver of these objections. 
      We overrule Salas’ fiftieth through fifty-seventh issues. 
      B. Ineffective Assistance of Counsel During Punishment Phase
      Salas’ forty-third and forty-fifth through forty-seventh issues claim that his trial counsel’s
failure to object to the State’s improper remarks during closing arguments when the State
characterized him as an “animal” and a “scumbag” amounted to ineffective assistance of counsel. 
The Court of Criminal Appeals recently held that Strickland applies to the punishment phase of
a noncapital case. Hernandez v. State, No. 506-97, 1999 WL 212791 (Tex. Crim. App. April 14,
1999).


 As mentioned previously, Strickland requires a defendant to show that: (1) counsel’s
performance was deficient to the extent that counsel failed to function as the “counsel” guaranteed
by the Sixth Amendment and (2) counsel’s deficient performance prejudiced the defense. 
Strickland, 466 U.S. at 687, 104 S.Ct. at 2064; Jackson, 877 S.W.2d at 771. Under Duffy and
its progeny, the standard for punishment phase proceedings was whether the defendant received
“reasonably effective assistance of counsel.” Valencia v. State, 946 S.W.2d 81, 83 (Tex. Crim.
App. 1997) (citing Ex parte Duffy, 607 S.W.2d 507, 516 (Tex. Crim. App. 1980)). When
utilizing Duffy, the defendant did not have to show prejudice as a result of counsel’s ineffective
assistance at the punishment phase, as required under the second prong of Strickland. Vaughn v.
State, 931 S.W.2d 564, 566 (Tex. Crim. App. 1996). However, a defendant must now show both
counsel’s deficient performance and that counsel’s deficient performance prejudiced the defense
for an ineffective assistance of counsel claim during the punishment phase. Strickland, 466 U.S.
at 687, 104 S.Ct. at 2064; Hernandez, 1999 WL 212791. 
      Specifically, Salas complains about the following remarks:
PROSECUTOR:If a man could have someone permanently mentally impaired for the
rest of his life, is that worth probation? I don’t like it, but I’ll say Ellis
County juries think that is worth probation; so the next scumbag that
comes in here and half beats someone to death, I’ll say just give him
probation. I don’t think that’s what you want, and I don’t think I’d be
doing my job if I did that.

*******************************
 
Probation? I don’t see it. I think this is a time for retribution or
punishment certainly to protect the rest of us from John Salas. I told
you he’s an animal. I still think he is. Unfortunately the punishment
he should get ain’t available. I ask you to consider that this case – how
could it get any worse? 

      Although the State’s characterization of a defendant as an “animal” is discouraged, whether
it requires reversal is determined upon a case-by-case basis. See Tompkins, 774 S.W.2d 195. If
we were to assume that the trial court would have sustained Salas’ objections to the State’s
remarks, the trial court could have likely cured the error by giving the jury an instruction to
disregard. See Dinkins, 894 S.W.2d at 357; Tompkins, 774 S.W.2d at 218; Giesen, 688 S.W.2d
at 178. 
      We overrule Salas’ forty-third and forty-fifth through forty-seventh issues.
      Salas’ forty-eighth and forty-ninth issues claim that his trial counsel’s failure to object to the
State’s improper remarks during closing arguments in the punishment phase of his trial amounted
to ineffective assistance of counsel because the remarks were an improper comment on his failure
to testify during the punishment phase because the State commented on his lack of remorse.
      The State cannot comment on a defendant’s failure to testify. Tex. Code Crim. Proc. Ann.
art. 38.08 (Vernon 1998); Vaughn, 931 S.W.2d at 572. Although Salas testified during the guilt-innocence but not the punishment phase of his trial, the State is prohibited from commenting on
his failure to testify during the punishment phase. See Swallow v. State, 829 S.W.2d 223, 226
(Tex. Crim. App. 1992) (State’s comments on defendant’s lack of remorse during punishment
phase were an improper comment on defendant’s failure to testify during the punishment phase
even though defendant testified during guilt-innocence phase). In order to qualify as a comment
on the defendant’s failure to testify, the State’s language, viewed from the jury’s standpoint, must
refer to evidence which can only come from the defendant. Goff v. State, 931 S.W.2d 537, 548
(Tex. Crim. App. 1996); Swallow, 829 S.W.2d at 225. When there is no evidence of the
defendant’s lack of remorse and the State comments upon it, the State’s comment would naturally
and necessarily be a comment on the defendant’s failure to testify because only the defendant can
testify as to his remorse. Swallow, 829 S.W.2d at 225; Oliva v. State, 942 S.W.2d 727, 734 (Tex.
App.—Houston [14th Dist.] 1997, pet. dism’d). However, if evidence in the record supports the
State’s comments, then there is no error. See Davis v. State, 782 S.W.2d 211, 222-23 (Tex.
Crim. App. 1989) (when record contains evidence that supports the State’s comment that
defendant did not show any remorse, no error and proper summation of the evidence); Roberts v.
State, 923 S.W.2d 141, 145 (Tex. App.—Texarkana 1996, pet. ref’d) (when record contains
evidence that demonstrates defendant’s lack of remorse at the scene of the crime or outside the
trial setting, the State’s comments were not improper comments on failure to testify but a
summation of the evidence); Richards v. State, 912 S.W.2d 374, 382 (Tex. App.—Houston [14th
Dist.] 1995, pet. ref’d) (State’s comments that non-testimonial demeanor of defendant indicated
no remorse was a proper summation of the evidence because record contained evidence that
supported comments). 
      Specifically, Salas complains about the following remarks:
PROSECUTOR:. . . I would feel insulted – to turn around and ask for probation. I tell
you what probation is for. Probation is when somebody comes up here
and shows you some remorse. And sitting in this chair right here, the
only, quote, remorse I heard was when I asked him, was he ashamed
of what he did or was he proud of what he did. You remember what he
said? Little bit. And I probably shouldn’t have done it, but I said, are
you ashamed about that much or are you ashamed of it this much? 
There hasn’t been any remorse shown by this defendant, not one bit.

      During the State’s cross-examination, Salas denied attacking either victim and testified that
his accomplices were responsible for the attacks. However, Salas admitted that he did not attempt
to help either victim after they were attacked, nor did he call an ambulance for either victim. 
Salas also admitted that he drove off with his accomplices and left Colunga laying on the ground
in the dirt and blood. Salas also admitted during cross-examination that he was not surprised when
Castillo and Maldonado beat up the two victims and that he “cared a little bit.”



      The State’s comment during closing arguments of the punishment phase of the trial referenced
Salas’ specific testimony in the guilt-innocence phase of his trial. The State did not comment upon
testimony that Salas failed to give or upon testimony that was noticeably absent and could only
come from Salas. Instead, the State commented upon testimony that Salas gave in which he
admitted that he did not have much remorse for the commission of the offenses. The State
commented upon Salas’ own statements. Therefore, the State’s comment during the punishment
phase of the trial was a summation of the evidence that was supported by the record. Salas’
counsel’s failure to object to the State’s proper closing argument is not error and accordingly, does
not amount to ineffective assistance of counsel. 
      We overrule Salas’ forty-eighth and forty-ninth issues.
      For the reasons stated, we affirm the trial court’s judgment.
                                                                               REX D. DAVIS
                                                                               Chief Justice
Before Chief Justice Davis
      Justice Cummings (not participating)
      Justice Vance
Affirmed
Opinion delivered and filed April 28, 1999
Do not publish